ALMA STOFER, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE CO., APPELLANT.—41 S. W. (2d) 614.

Kansas City Court of Appeals. June 15, 1931.

*Dwight Roberts* and *Ira B. McLaughlin* for respondent.

*Charles L. Carr* and *Louis R. Weiss* for appellant.

BOYER, C.—Action for damages. We will refer to the parties as plaintiff and defendant instead of respondent and appellant. Plaintiff sued on account of personal injuries alleged to have been caused by the negligence of defendant when plaintiff fell from a motor bus. The petition alleges and the evidence shows that defendant was a common carrier of passengers for hire and operated motor busses in the pursuit of its business. On October 1, 1927, plaintiff was a passenger upon a motor bus operated by defendant. Signal was given and the bus stopped at a regular place to permit her to alight. In leaving the bus plaintiff fell in the street and was severely injured. The negligence charged is the following:

"That while she was in the act of stepping from the platform and step of said bus defendant negligently caused and permitted said bus to suddenly and unexpectedly start, thereby throwing and causing plaintiff to fall to the pavement."

The answer was a general denial.

Plaintiff testified that when the bus stopped she started to get off; went to the rear door, stepped down on the first step from the floor of the car and the doors opened; that she started to raise her umbrella, the doors made a movement to close and the bus moved a little forward; that she stepped back with one foot on the floor of the car, turned her head, looked in a mirror at the driver and nodded, after which the doors opened again "and just as I raised my foot to make the step down again, the bus gave a sudden lurch forward, and I fell out." Numerous witnesses called by defendant testified that after the bus stopped it remained stationary and there was no movement of it whatever until after plaintiff had fallen in the street.

The issue of fact as to whether the bus moved as alleged or did not move while plaintiff was in the act of alighting was submitted to the jury by appropriate instructions upon that issue, both by plaintiff and defendant. The jury found for plaintiff and assessed her damages at $7500. Judgment followed, defendant duly appealed, and assigns error in giving plaintiff's instructions 1 and 3, and refusing defendant's Instruction D, and that the verdict is grossly excessive. The evidence will be further noted in the course of the

## OPINION.

Plaintiff's Instruction 1 is assailed because of an alleged prejudicial stinger in the tail of the first paragraph. The opening paragraph of the instruction is in these words:

"The court instructs the jury that if you find and believe from the evidence that on the 1st day of October, 1927, plaintiff paid her fare and became a passenger upon the automobile bus mentioned in evidence and that the same was operated by the defendant, then and in that event, you are instructed that it was the duty of the defendant to use the highest degree of care that is ordinarily exercised by very careful and skillful men under the same or similar circumstances to discharge plaintiff from said bus at her destination in a safe manner, and the failure to use such care would constitute negligence and the defendant would be responsible for all injuries suffered by plaintiff as a direct result of such negligence, however slight the same might be."

The criticism of defendant is directed solely at the concluding words "however slight the same might be." There is no objection to any other feature of the instruction. It further directs the jury, and proceeds:

"If, therefore, you further find and believe from the evidence . . . that said bus stopped for the purpose of permitting passengers to alight therefrom at said usual stopping place, if you find said place was a regular stopping place for said bus; that thereafter and at said time and place plaintiff attempted to alight from said bus and while she was in the act of alighting therefrom, if you so find the facts, said bus suddenly or unexpectedly started and that thereby, if you so find the facts, plaintiff was thrown or caused to fall to the pavement of said Linwood Boulevard, and that as a direct result of such fall, if you find she did so fall, plaintiff received bodily injuries, then and in that event you are instructed that such occurrence creates a presumption if negligence for which the defendant is liable and the burden is upon defendant to disprove such presumption. . . .

"The term 'negligence' as used in this instruction means the failure to use the highest practicable degree of care and caution that very cautious and skillful men, engaged in a like business, would use under the same or similar circumstances."

Instruction B given on behalf of defendant is this:

"The court instructs the jury that if you believe and find from the evidence that at the time and place mentioned in the evidence the bus came to a stop at the regular stopping place on Linwood near Brooklyn Avenue; and if you further believe and find from the evidence that thereafter plaintiff undertook to alight from said bus while said bus was stationary, and that said bus did not start or move while plaintiff was in the act of alighting therefrom, if so, then your verdict must be for the defendant and against plaintiff. And this is true even though you believe and find from the evidence that plaintiff fell from the steps of said bus."

With reference to the liability of defendant the contested question of fact was simply whether the bus started, as plaintiff alleged, or whether it remained stationary, as defendant asserts, while plaintiff was attempting to alight. This is shown by the manner of presentation of that issue in the foregoing instructions as well as by a voluminous record of testimony. It was the only contested question, aside from that of the nature and extent of plaintiff's injury. We state this as preliminary to a consideration of defendant's point that the instruction contains reversible error because it holds defendant responsible for negligence "however slight the same might be."

The effect of appellant's argument is that to hold defendant responsible for slight negligence would place upon it the duty to exercise extraordinary care and a greater burden than it was required to carry because the law requires only the exercise of the highest degree of care; that defendant is not liable for a failure

of extraordinary care, but only for a failure to exercise that degree of care usually exercised by very careful persons under the same or similar circumstances; that there are no degrees of negligence recognized by the law, and that the term "slight negligence" used in an instruction opens wide the field of speculation and authorizes the jury to render a verdict according to its own whim and for any conduct that it might determine to be actionable. The phrase in the instruction "however slight the same might be," considering the connection in which used, is not as portentous as might at first appear, nor as potential for harm as appellant insists. Degrees of negligence are unknown to our present day jurisprudence as held in the cases of Young v. Railroad, 227 Mo. l. c. 332, and State ex rel. v. Haid, 25 S. W. (2d) l. c. 94, cited by appellant. But these authorities and similar ones which discard the ancient fiction of degrees of negligence, such as slight, ordinary, and gross, tell us nothing in reference to whether an instruction similar to the one under review contains reversible error. Appellant says the case of Magrane v. St. Louis & Suburban Ry. Co., 183 Mo. 119, l. c. 128, has decided the question and states the law as it contends. The instruction examined in that case placed upon defendant the duty "as far as it is capable by human care and foresight, to carry such passengers safely, and the defendant is responsible for all injury resulting to such passenger from any, even the slightest, neglect or negligence." It was held that the instruction was liable to be misconstrued by a jury as meaning care to the utmost limit imaginable, and that was more than the law required. And the court further said:

"The term 'even the slightest neglect or negligence' should also be avoided in an instruction. There are no degrees of negligence; there are degrees of care, and a failure to exercise the proper degree of care is negligence. The jury should not be puzzled with degrees of negligence."

It was further held that the instruction was not of injurious effect for reasons stated in the opinion. The case does not decide the question we have in hand. It is one thing to say that certain terms should be avoided and quite another to hold that their use would constitute reversible error. It is proper to refer to the context of the instruction wherein objectionable words are found, and to other instructions presenting issues to the jury, with a view of determining the probability of harmful effect from the words criticized. Instruction 1 clearly defines the duty of defendant in reference to the degree of care to be exercised by a carrier and correctly defines the term negligence, and required the jury to find that the bus suddenly and unexpectedly started and caused plaintiff fall and in that event there was a presumption of negligence.

Instruction B, given at the request of defendant, plainly informed the jury that if it found from the evidence that the bus did not start or move while plaintiff was in the act of alighting, that the verdict must be for the defendant. With the issues so clearly defined it is not apparent that ordinarily reasonable minds would be misled or confused, or would be led into the field of speculation for any other negligence by a vagrant phrase in the body of the instruction which might be said to characterize negligence. The context considered, the objectionable words may also be said to be descriptive of and refer to the *failure* of defendant to use due care. We agree that the phrase "however slight the same might be" should have been avoided. It looks somewhat like an effort to obtain an unfair advantage and to be pressing for the utmost that could be tolerated.

Appellant also relies upon decisions which have condemned instructions on the issue of contributory negligence and cities Hires v. Grocery Co. (Mo. Sup.), 296 S. W. 408; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157, l. c. 161, and Howard v. Scarritt Estate Co., 267 Mo. 298, 184 S. W. 1145. The ruling in these cases is not applicable. In the Hires and Howard cases the instructions on contributory negligence involved the doctrine of comparative negligence which was condemned, and further they did not require the jury to find that the negligence of plaintiff contributed directly to cause injury. The Bobos case was submitted under the humanitarian rule and contributory negligence was not in the case. Authorities from other jurisdictions have also been cited; they are not controlling or persuasive.

While it has been said that the law does not recognize degrees of negligence, it has been judicially declared in numerous cases, and must be accepted as the settled rule, that a carrier of passengers is responsible for injuries arising from "slight negligence." [Price v. Met. Street Ry. Co., 220 Mo. 435, 458; Clark v. Ry. Co., 127 Mo. l. c. 208; Redmon v. Met. St. Ry. Co., 185 Mo. 1, 9; Stauffer v. Met. St. Ry. Co., 243 Mo. 305, 327; Goldsmith v. Holland Building Co., 182 Mo. 597, 607; Klebe v. Parker Distilling Co., 207 Mo. 480, 488; Agnew v. Met. St. Ry. Co., 178 Mo. App. 119, 122; Siegel v. Illinois Central R. Co., 186 Mo. App. 645, 653.] Our Supreme and other appellate courts have repeatedly approved instructions containing words to the effect that defendant is responsible for injuries arising from "slight negligence" or words of similar import. The leading case on the subject in our State appears to be Lemon v. Chanslor, 68 Mo. 340, 342, 355. The ruling there made upon the instruction in question appears to have been consistently followed.

In the case of Furnish v. Mo. Pac. Ry. Co., 102 Mo. 438, 450, the instruction contained these words:

". . . is responsible for all injuries resulting from slight negligence."

In Bischoff v. Peoples Ry. Co., 121 Mo. 216, l. c. 220, the instruction contained these words:

·"And defendant is liable for even the slightest neglect of defendant's servants."

In Sweeney v. K. C. Cable Ry. Co., 150 Mo. 385, 393, the instruction contained these words:

". . . and defendant is liable in this case if its agents, servants and employees, in charge of said cars, were guilty of even slight negligence in the management and operation thereof."

And in the course of the opinion, l. c. 401, it is said:

"The fact that in it the jury were told that defendant was liable if its servants were guilty of even slight negligence was nothing more than telling them that the law required of it the highest degree of care, and did not vitiate it."

In the case of Olsen v. Citizens Ry. Co., 152 Mo. 426, l. c. 430, the court approved an instruction containing these words:

"And if the defendant's servants in charge of the said cars, failed even in a slight degree, to use such care, and thereby directly contributed to cause plaintiff's injury, then defendant is liable, . . ."

In reference to the Olsen case it was said in Porter v. St. Joseph Ry. Light, Heat & Power Co., 311 Mo. 66, l. c. 74:

"In the Olsen case the plaintiff, a passenger on a street car, was injured by a collision between the car and a fire department vehicle. The court gave an instruction for the plaintiff, telling the jury that if the plaintiff was a passenger upon defendant's car, the latter was required to exercise a high degree of care in watching for an approaching fire wagon, and if the defendant failed in the slightest degree to sue such care, and the plaintiff was thereby injured, then the defendant was liable."

In the case of Cooley v. Dunham, 196 Mo. App. 399, l. c. 405, 195 S. W. 1058, the court said:

"Hence the subsequent cause in the instruction saying that if the jury believed from the evidence that in starting the car with a sudden or violent jerk the defendants 'were guilty even of slight negligence in the management and operation of said car,' etc., was not erroneous. It has been approved in other cases. [Stauffer v. Metropolitan St. Ry. Co., 243 Mo. 305, 327, 332; Zwick v. Swinney, 178 Mo. App. 142; Richardson v. Metropolitan St. Ry. Co., 166 Mo. App. 162; Brod v. St. Louis Transit Co., 115 Mo. App. 202, 209.]"

In Faulk v. Kansas City Rys. Co., 247 S. W. 253, 254, is the following:

"Plaintiffs would have been entitled to an instruction that defendant was responsible for even slight negligence, and was bound

to furnish safe equipment and employees so far as human skill and foresight could provide. [Furnish v. Mo. Pac. Ry. Co., 102 Mo. 438, 442, 452, 13 S. W. 1044, 22 Am. St. Rep. 781.] As was said in Lemon v. Chanslor, 68 Mo. 340, 356, 30 Am. Rep. 799, quoting from Story on Bailments:

"It has been accordingly held that passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight can go, that is for the utmost care and diligence of very cautious persons, and of course they are responsible for any, even the slightest neglect."

Similar expressions in instructions have not been condemned or criticized except in the Magrane case, *supra*, where it was said that they should be avoided. We are not cited to any authority holding an instruction erroneous for the reasons assigned to the extent of requiring reversal. Under the prevailing decisions we are required to hold that Instruction 1 in the case at bar does not contain reversible error.

Plaintiff's Instruction 3 is said to be erroneous. It is on the measure of damages and reads in part:

"The court instructs the jury that if under the evidence and instructions of the court your verdict is in favor of the plaintiff, it then becomes your duty to assess damages in favor of plaintiff and against the defendant in such an amount as will reasonably compensate her for the injuries, if any, she has received as a direct result of the negligence, if any, of the defendant mentioned in instruction No. 1, and in arriving at your verdict you should take into consideration the following:

"1. The physical condition of plaintiff immediately before and since the injuries, if any, on account of which she sues."

The foregoing is followed by other numbered paragraphs covering subjects to be taken into consideration and refer to "such injuries, if any" and to "said injuries, if any."

The error is said to be in the language of Clause 1, in that the jury is erroneously directed to take into consideration "the injuries, if any, on account of which she sues." It is claimed that the subsequent clauses of the instruction in using the words "such injuries" and "said injuries," refer to the injuries named in Clause 1 and are also erroneous. It is further claimed that the objectionable words refer the jury to the pleadings to ascertain the facts without regard to injuries proved and do not limit the recovery to injuries actually proved, but that the jury is directed to search the pleadings to determine the injuries "on account of which she sues."

Defendant relies upon Fisher v. St. Louis Transit Co., 198 Mo. 562, 590. In that case an instruction was condemned which authorized the jury to find that all injuries "of which he complains"

were the direct result of a fall. No instruction informed the jury what the issues were and the court said that "the jury were left to form their own conclusions as to the injuries of which plaintiff complained, which, according to the allegations of the petition, embraced injuries for which the defendant could not be held liable." It is further said on page 591:

. "In the case at bar the issues were sharply presented by the petition and answer, and instead of telling the jury what the issues were the instruction told them that 'if plaintiff received as the direct result thereof the injuries of which he complains,' thus authorizing the jury, if so inclined, to take into consideration the injuries claimed to have been sustained by plaintiff by reason of his attack of diphtheria, with respect to which there was much evidence."

Another instruction on the measure of damages is considered in the same case in which it is said:

"If it is too broad, as seems to be intimated by defendant, in that it embraces an item of damages not allowable, defendant should have asked an instruction restricting plaintiff's recovery to damages allowable."

The case is not controlling authority upon the point made by defendant. The facts and the instructions differ from the facts and instructions in the case at bar. In the instant case the jury was informed of the issues by other instructions, and the instruction which is now under consideration is upon the measure of damages alone. By its terms and in the initial paragraph the jury is expressly limited in its award to reasonable compensation for the injuries, if any, received "as a direct result of the negligence, if any, of the defendant mentioned in instruction No. 1." The subsequent reference to injuries "on account of which she sues" and to "such injuries" and "said injuries" was necessarily qualified and limited in so far as compensable to that character of injuries which were received as a direct result of defendant's negligence. Further, reference in Clause 1 is primarily to plaintiff's condition in respect to time before and since the injuries. The subjoined phrase "on account of which she sues" is not misleading and could not authorize the jury to award compensation for any injury not shown in evidence. In fact there is no evidence that plaintiff ever sustained any injury or was ever afflicted with any ailment, disability or disease other than that arising from the casualty in question. Of course, it is improper for an instruction to refer the jury to the pleadings for information on a controverted issue of fact as held in Dietderick v. Missouri Iron & Metal Co., 9 S. W. (2d) 1. c. 829, and many other cases. Considering the entire instruction and other instructions given, we cannot say that Instruction 3 refers the jury to the pleadings for the issues in the case or to the allegations of

the petition to ascertain the injuries "on account of which she sues." The petition was not in evidence and there is nothing in the record which would indicate that the jury had any conception of its contents. It must be assumed that the jury considered only the evidence adduced. [Brice v. Payne, 263 S. W. 1005, 1007-8.] The instruction does not permit the jury to assess damages for injuries for which defendant is not liable, but the jury was limited to such injuries as directly resulted from defendant's negligence.

In the case of Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 190, 279 S. W. 89, 94, the court approved an instruction which directed the jury to "take into consideration the physical condition of the plaintiff immediately before and since receiving the injuries on account of which she sues." The instruction was criticized and considered in reference to other features of it and the words "on account of which she sues" did not receive specific attention. A similar phrase is contained in an approved instruction in Curtis v. McNair, 173 Mo. l. c. 290, 73 S. W. 172, and in Holman v. Southern Iron Co., 152 Mo. App. l. c. 685. The words "on account of which she sues" or similar words used in instructions heretofore have apparently been accepted without criticism and without complaint of a harmful effect, especially when used in an instruction on the measure of damages. If defendant had fears of the effect of the objectionable words, it had the opportunity and the duty to seek modification and offer an instruction on the same subject which would prevent any harmful result. [Oldham v. Standard Oil Co., 15 S. W. (2d) 899, 901; Cunningham v. Doe Run Lead Co., 26 S. W. (2d) 957, 961.] Defendant has not shown reversible error in Instruction 3.

Defendant insists that it had the right to have the jury instructed that defendant company was not an insurer of the safety of the plaintiff as requested in its offered Instruction D. Defendant was entitled to that declaration of law. A carrier is not an insurer of the safety of its passengers and is liable only for negligence. [Bond v. St. Louis-San Francisco Ry. Co., 288 S. W. l. c. 783.] But that was not the only proposition contained in the instruction. It further directed the jury in reference to the duty of defendant as follows:

"Nor was defendant required to exercise any degree of care or foresight that was not reasonably practicable."

The quoted words were objectionable and the instruction was properly refused. It sets forth a less degree of care than that required of defendant in plaintiff's Instruction 1, and the word "reasonably" qualifying the word "practicable" is confusing and liable to be misconstrued. [Weissman v. Wells, 306 Mo. l. c. 100, 267 S. W. 400, 406, 407; Kirkpatrick v. Metropolitan St. Ry. Co., 211 Mo. 68, 87, 109 S. W. 682; Benjamin v. Metropolitan St. Ry. Co., 245 Mo. 598, 614, 151 S. W. 91, 96.]

Finally, is the verdict excessive? This question calls for a statement of the evidence and permissible inferences most favorable to support the award. With this in view we state the facts. At the time of plaintiff's injury she was thirty years of age, sound physically, weighed about 165 pounds, and was regularly employed as a bookkeeper at a salary of $120 per month. When plaintiff left the bus she fell to the pavement and received a principal shock of the fall upon her knees and particularly upon the right knee, which was so bruised that it resembled "a mangled piece of flesh." The left knee, back, and elbows were also bruised, but these latter injuries did not result in any permanent disability. Plaintiff was removed to the hospital where she received medical attention and X-ray pictures were taken. There were no broken bones. Plaintiff was sent home late in the evening of the same day and remained in bed about two days and a half; thereafter she sat up at times with her foot on a pillow and a chair. A doctor was sent to her on the evening of the first day and he called to see her again the next morning. At that time the knee was greatly swollen and internal hemorrhages had set in and extended from the knee cap almost to the ankle; her knee was swollen twice its ordinary size; there were three black streaks almost to the ankle, and a blood clot half way between the knee and the ankle. Through some apparent misunderstanding the first doctor did not call again and plaintiff obtained another physician who visited and treated her twice daily for four weeks and thereafter once a day for several weeks longer, and then at less and less frequent intervals until the time of the trial two years after the injury. Shortly after the injury two lumps appeared on the side of the knee just below the knee cap; the knee pained continuously for six weeks; at the end of about four weeks, plaintiff returned to her place of employment, but special provision was made for her so that her limb could be left on a chair, and she was not in the general office. She could get around only with crutches which she continued to use for about eight weeks after she returned to work. Her employer and friends provided means of transportation to and from her home. For a month or six weeks she was supplied with an assistant to run errands and was required to divide her salary with the assistant.

In the course of time plaintiff walked without aid of cane or crutch, but there was an impediment in the use of her right knee. At times when the right knee was flexed ready to take a step it would catch or lock and she would be unable to extend it or place her foot on the ground until by manipulating the knee and foot it would become unlocked; she would feel something snap and could then take a step. This catching or locking has happened as often as two or three times a day. Sometimes there would be an interval

of four or five days when there would be no locking of the knee. When the knee locks she has not always been able to retain her balance and has been caused to fall a number of times. The testimony shows that this locking occurs "real often" and "many times" and "a good many times" and "quite a good many times" and "very frequently." It has occurred when plaintiff was getting off the streetcar; when she was walking along the street; in the theater; when walking across the floor at home; at her place of work, and elsewhere. Whenever the locking occurs the knee pains; she is compelled to stop and manipulate it to put it back in place. The last attack of this kind occurred just a few days before the trial. The swelling has never completely receded; plaintiff limps at times; her knee still pains her if she is much on her feet; when the swelling increases she wears a bandage; she still calls on the doctor for aid. In addition to the catching or locking of the knee at times plaintiff feels something grind and scrape and cannot complete a step; then her knee begins to ache and she cannot bear her weight upon it even though it does not catch.

Two physicians examined plaintiff shortly before the trial. Their testimony, with that of plaintiff's regular physician, is to the effect that plaintiff has suffered a dislocation of the semilunar cartilages of the right knee; that the symptoms evidenced by plaintiff are characteristic of such dislocation; that her condition is permanent; that there is no remedy except by a surgical operation which is of doubtful propriety and extremely hazardous on account of danger of infection, irritation, and a stiff knee as a result. The semilunar cartilage is difficult to locate until it calcifies; it does not calcify usually until between the ages of thirty-eight and fifty years. Sometimes in such cases the knee becomes permanently locked and an operation is not usually resorted to until that condition exists. When the cartilage is removed there is no cushion between the bones of the knee. At the time of the trial plaintiff's right knee was one and one-fourth larger in circumstance than the other. The prognosis of plaintiff's disability is unfavorable.

Defendant's medical testimony tended strongly to show that apparently there was nothing abnormal about plaintiff's right knee, but we cannot consider this evidence in disposing of the question in hand. [McClellan v. Kansas City Public Service Co., 19 S. W. (2d) 902, 910.]

The verdict appears large, but in view of that evidence tending to show the greatest disability, inconvenience, and probable hazard to plaintiff in the future, and which tends to support the unanimous award of the jury and its approval by the trial court, we cannot say the verdict is so plainly excessive as to indicate error, passion or prejudice and to call for appellate interference. The power to

388

interfere with the verdict of a jury is and should be exercised whenever the amount of the award is clearly unjust. This power, however, is exercised with caution and reluctance and is used only to prevent manifest injustice.

Our conclusion is that appellant has not shown any procedural or other error materially affecting the merits of the case and the judgment should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.