MARIE JENSEN, Respondent, v. KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant, No. 41953—238 S. W. (2d) 305.

Division One, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

968

*David M. Proctor*, City Counselor, *Henry Arthur* and *John J. Cosgrove*, Assistant City Counselors, for appellant.

*Thomas C. Swanson* and *K. L. Stockman* for respondent.

[305] VAN OSDOL, C.—In this tort action the jury returned a verdict awarding $8500 to plaintiff who had suffered injury when she fell on a sidewalk in Kansas City. The defendant municipality, City of Kansas City, has perfected an appeal from the ensuing judgment.

Plaintiff fell and was injured when she and her daughter were walking southwardly on the concrete sidewalk along the east side of Barat Street—she fell at a point in front of the property numbered 333, fronting on that street. At that point the growth of the root of a tree near the west side of the walk had broken the walk and raised a segment of the concrete three or four inches above the elevation of the walk's normal surface level. Plaintiff slipped or caught her foot ''on that broken piece of the broken sidewalk'' and fell forward full length with her left leg doubled under her.

Defendant-appellant City assigns error in an instruction, Instruction No. 1, given at the request of plaintiff; and defendant-appellant [306] further contends the jury's award was excessive.

Plaintiff had alleged defendant City had failed to "exercise ordinary care to maintain the sidewalk in front of No. 333 Barat Street - - - in a reasonably safe condition for public use." It was alleged that, as a result of such negligence, "said sidewalk became broken, in a state of upheaval, with a ridge its entire width and with segments projecting upwardly - - -." Defendant City pleaded contributory negligence of plaintiff in failing to use her senses in selecting the course she was pursuing.

Introductory and necessary to our examination of contentions relating to Instruction No. 1, we parenthetically note a mistake on the part of plaintiff in the introduction of evidence. Plaintiff in her case-in-chief introduced into evidence her Exhibits 1, 2 and 3, photographs purporting to portray the defective condition of City's walk in front of No. 333 Barat Street where she was injured. These exhibits were pictures of a defect in some sidewalk, the location of which walk is not disclosed in the record; but the exhibits were honestly, though mistakenly, introduced into evidence by plaintiff as the pictures of the defect in the walk which caused plaintiff's fall. Defendant City introduced its Exhibits A, B and C, no doubt actual portrayals of the place of plaintiff's injury.

There is a remarkable similarity in the appearance of the defect in a sidewalk shown in Exhibits 1, 2 and 3 and that shown in Exhibits A, B and C. No objection was interposed to the introduction of any of the six exhibits; and counsel for plaintiff and defendant, and the trial judge had not discovered during the trial that plaintiff's Exhibits 1, 2 and 3 were not taken at the actual place of the injury, that is, in front of No. 333 Barat Street. However, a stone wall near the edge of a sidewalk is to be seen in the pictures, plaintiff's Exhibits 1, 2 and 3; and there is no stone wall shown in defendant's Exhibits A, B and C. The jury, while considering their verdict, made inquiry of the trial judge "as to why a wall appears in Plaintiff's exhibits and does not appear in Defendant's exhibits." In answering the inquiry, the trial judge stated, "These pictures have been offered in evidence without any objection whatever. It has been conceded by the parties in effect by making no objections or offering any counter evidence that they do correctly show the sidewalk where the accident occurred; so the part about the wall is of no consequence anyway." It seems to us the strange inadvertence in the introduction of the exhibits, whereby plaintiff introduced photographs verified by her as "reasonably good pictures" of the walk at the place she was injured, could have had but the same effect as if plaintiff had introduced into evidence a drawing or diagram verified

by a witness as being a fair representation of the walk's condition at the place she was injured.

By Instruction No. 1 the jury was advised,

"- - - that, if you find and believe from the evidence that the sidewalk on the east side of Barat Street, in the 300 block, was, on or about the 10th day of August, 1948, a public sidewalk, and was in an unsafe and dangerous condition for travel thereon by the public, if so, by reason of a break or depression in said walk (if you find there was a break or depression in said walk), and that a sufficient length of time had elapsed between the time said sidewalk became unsafe and dangerous (if you believe it was) and the time of the alleged injury to plaintiff, for the defendant Kansas City, by the exercise of ordinary diligence and care, to have discovered and repaired said sidewalk before the time of the alleged accident, and if the jury further believe from the evidence that the plaintiff on or about said date was traveling along and over said sidewalk and was exercising ordinary care for her own safety, and that, while passing along and over said sidewalk at said point, she was caused to fall upon said walk and injured by reason of the unsafe and dangerous condition of said walk, if so, then the jury is instructed that your verdict must be for the plaintiff, Mrs. Jensen, and against the defendant, Kansas City.''

Defendant-appellant City urges the instruction hypothesized that plaintiff, while passing along and over the sidewalk "at [307] said point" was caused to fall, but ignored and did not hypothesize the *point* as being in front of No. 333 Barat Street as stated in plaintiff's petition, and consequently the instruction was broader than the pleadings, the jury being authorized to find for plaintiff if she fell and defendant was negligent in the maintenance of the walk at any point in the "300 block" on Barat Street; that the instruction hypothesized "a break or depression" in the walk, whereas the petition alleged that the walk was "broken, in a state of upheaval, with a ridge - - - and with segments projecting upwardly - - -," and so the instruction, it is argued, was erroneous in hypothesizing a different kind of defect than the one alleged in the petition; and that the instruction containing the erroneous hypothesis authorizing recovery for any defect in the 300 block was further erroneous in hypothesizing that defendant City, in the exercise of ordinary care, could have timely discovered and repaired the walk, because the jury, having been permitted to consider a defect anywhere within the "300 block," was left to speculate upon how long the defect had existed. These asserted faults in the instruction, it is said, were especially prejudicial because of the mistakenly introduced Exhibits 1, 2 and 3.

Appellant City, citing Degonia v. St. Louis, I. M. & S. R. Co., 224 Mo. 564, 123 S. W. 807; State ex rel. Central Coal & Coke Co. v.

Ellison, 270 Mo. 645, 195 S. W. 722; Rucker v. Alton R. Co., 343 Mo. 929, 123 S. W. 2d 24, urges an instruction must be within the purview both of the pleadings and the evidence. And an instruction should not authorize a verdict on a charge of negligence, which a plaintiff's evidence shows has no causal connection with his injury. Carlisle v. Tilghmon, Mo. Sup., 159 S. W. 2d 663. In the Central Coal & Coke Company case, the instruction hypothesized the falling of slab or rock in one of the main entries of defendant's mine and did not submit the falling of rock at the place where the petition "charged the negligence to be"; nor did it limit recovery to negligence in failing to brace or otherwise support the roof of the entry wherein the deceased was at work. Such error in the instruction was presumed to be prejudicial, and there was apparently nothing in the case by which it could be determined the error was harmless.

In the instant case Instruction No. 1 hypothesized a defect or unsafe condition on the east side of Barat Street in the 300 block, and that plaintiff was caused to fall while passing over the sidewalk "at said point," namely, the point where the walk "was in an unsafe and dangerous condition - - - by reason of a break or depression." The evidence tends to show the nature of the defect in the walk "at said point" over which plaintiff was passing when she fell; and no testimony was introduced tending to disclose a defect in the sidewalk in the 300 block other than that where the evidence indicated plaintiff fell. Defendant City was not in an unfair position in preparing its defense. The trial judge and counsel were interested in the allegations of the pleadings, but the jury was interested in the condition of the sidewalk disclosed by the evidence and hypothesized in the instructions as the cause of plaintiff's injury. The petition, in alleging the unsafe condition was "in front of No. 333 Barat Street," advised defendant City and its counsel of the location of the defect which, it was alleged, caused plaintiff's fall. Defendant City was consequently prepared to present evidence, and did present Exhibits A, B and C, photographs, showing the defect "at said point" where plaintiff fell. Definitely the Exhibits 1, 2 and 3 are not unfair representations of the defect "at said point." It is not contended the instruction omits an element essential to plaintiff's recovery. And, in submitting plaintiff's contributory negligence, defendant City requested the given Instruction A, which hypothesized plaintiff's negligence in failing to observe "the condition complained of in the sidewalk described in evidence." In our opinion, defendant City was not prejudiced by the failure to specifically hypothesize the shown defect was in "front of No. 333 Barat Street."

[308] The apparent variance between the defect or unsafe condition of the walk as described in the petition ("said sidewalk became broken, in a state of upheaval") and as submitted ("a break or depression") could not have been prejudicial, we think. Defend-

ant's Exhibits A, B and C disclose that the root of a tree in growing had broken the sidewalk and had "forced up" a segment of the walk above the normal ·surface of the walk. The upheaval of the walk, having been caused by the slow growth of a tree root, surely must have existed for such a time as would have enabled defendant City, in the exercise of due care, to have discovered and remedied the condition ere plaintiff was injured. A witness said the walk had been in "that condition - - - at least four or five years; perhaps longer." (The same kind of defect, due to the like growth of the root of a tree, was disclosed in plaintiff's Exhibits 1, 2 and 3.) And, of course, because of ·the breaking and upheaval of 'the walk so that a segment was "projecting upwardly," as alleged and shown in evidence, there was a shown correspondingly related "depression," in a sense, in that the walk's normal surface was below the broken and "forced-up" segment of the walk.

. In the situation, we are constrained to believe the faults complained of in Instruction No. 1, although Exhibits 1, 2 and 3 were mistakenly offered and received into evidence, were not such as would tend to confuse the jury into believing they were permitted to consider any defect other than that "at said point" shown in evidence and where the evidence disclosed plaintiff was injured; or that the instruction was otherwise harmful or prejudicial to defendant City. Instructions are not necessarily couched in the identical language of a petition. They may be so framed as to meet the competent evidence introduced under the pleadings, and so worded as to have the same legal intendment as pleaded. Hamilton v. Standard Oil Co., 323 Mo. 531, 19 S. W. 2d 679; Lampe v. Kansas City, Mo. App., 49 S. W. 2d 627; Sanders v. Armour & Co., Mo. App., 292 S. W. 443; Barnes v. Elliott, Mo. App., 251 S. W. 488.

As stated, defendant-appellant City contends the jury's award, $8500, is excessive.

When plaintiff fell she experienced numbness "all over." Her daughter helped plaintiff to her feet and .assisted her in walking the half block to the family home. The daughter called a physician who arrived in about fifteen minutes. Before the doctor arrived, plaintiff discovered her leg was discolored. She was then in such pain she "was just screaming." The physician bound plaintiff's leg above and over and under the kneecap with a heavy elastic bandage. Plaintiff was given a sedative. She remained at home that night, but was admitted to the Northeast Hospital the following day. X rays were taken. After two days plaintiff went home. Five days later she went to see an orthopedist. The specialist found the extension and flexion of the left knee were limited and painful, but X rays disclosed no fracture or dislocation of the joint. The specialist bandaged the knee and prescribed massage and heat treatment. Four months after her injury, plaintiff was admitted to Research Hospital and an opera-

tion was performed to remove the internal semilunar cartilage of the left knee. [The two semilunar cartilages "are actually (weight-bearing) cushions" between the upper and lower bones at the joint of the knee.] In the operation an incision was made down into the knee joint and the left cartilage entirely removed. Nine days later plaintiff returned to her home, and got around on crutches and in a wheel chair for three weeks. She now has a persistent "cold feeling" in her left leg. The extension of the left knee is not limited, but the flexion is limited ten to fifteen per cent. There is some atrophy of the muscles of the lower left leg. The atrophy is the wasting away of the muscles from disuse, indicatory of plaintiff's inability to properly make use of her leg. The "cold feeling" or numbness may lessen materially over a "number of years"; but the impairment of the leg is likely to be permanent and will continue to be painful, "particularly in weather changes."

[309] Prior to her injury, plaintiff, a housewife, 49 years old, did her general housework, including laundry. She had an interest in plant life—enjoyed working in her garden. She now cannot bend her knee far enough "to touch that knee to the floor". She has difficulty in going up and down stairs. She has to "hang on something - - - my knee sort of gives." She wears an arch support. She has to protect her leg "something like a person would on an artificial leg." She continues to experience pain in the use of her leg. The ordinary housework and laundry—"she used to do it up in one day, it (now) takes her two or three days." She cannot kneel to "get something down below in my cupboards." The permanent impairment of the use of the leg is between fifteen and twenty per cent. Some "might possibly consider it to be twenty-five per cent."

The amount of the jury's award would seem to be large, since there were no special damages such as expense of hospitalization and for medical attention or loss of earnings shown. In McGarvey v. City of St. Louis, 358 Mo. 940, 218 S. W. 2d 542, decided in 1949, a plaintiff, 36 years old, sustained a bruise of her left knee with hemorrhage into the knee joint, resulting in chronic synovitis. The plaintiff's injury was painful, permanent and annoying, and slowed her up to some extent, but her ability to turn out work was not greatly impaired; the jury's award of $10,000 was reduced to $7500. In the case of Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 181 S. W. 2d 536, decided in 1944, a railroad brakeman, 55 years old, who was earning $200 per month, sustained injury—the tearing loose of both semilunar cartilages from the lower bone of the knee joint. His injuries were painful and permanent, preventing him from doing heavy manual labor. A judgment of $15,000 was held excessive by $5000. In Stofer v. Kansas City Public Service Co., 226 Mo. App. 376, 41 S. W. 2d 614, a verdict of $7500 was held, in 1931, not to justify appellate court interference. The injury in its effect was somewhat like that

974

of plaintiff herein. The plaintiff in the Stofer case, a woman 30 years of age, was a bookkeeper earning $120 per month. About four weeks after she was injured she returned to her employment, special arrangements having been made at the place of her employment to make her comfortable; and for a month or six weeks she was required to divide her salary with an assistant.

Giving consideration to the purchasing power of the dollar, and having a regard for the rule of reasonable uniformity of awards, we find it difficult to see that the amount of the award in the instant case is appreciably "out of line." It is difficult to see (from the evidence introduced tending to show the nature and extent of plaintiff's injury and viewing such evidence from a standpoint favorable to plaintiff) that the award was grossly excessive—excessive in any substantial amount. Considering the nature of plaintiff's injuries in their effect upon plaintiff's movement or locomotion—the way she gets around—the jury and the trial judge were surely in at least as good a position to measure an award of reasonable compensation as are we.

It is true plaintiff is a housewife who was not engaged in any employment yielding a salary when she was injured; but, as the evidence shows, she no longer can perform her housework efficiently, with ease and in comfort; she has suffered pain and will continue to do so; she would be greatly handicapped should she be obliged to seek lucrative employment; and who can say she has not lost the pleasure she formerly enjoyed in tending her garden, and in the normal manner of performance of her housewifely duties.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.