Margaret STAFFORD, Plaintiff-Respondent,

v.

FRED WOLFERMAN, Inc., Defendant-Appellant.

No. 45774.

Supreme Court of Missouri, Division No. 1.

Dec. 9, 1957.

Smithson & Smithson, and Spurgeon L. Smithson, Kansas City, for appellant.

Don M. Jackson, James W. Benjamin, Rogers, Field, Gentry & Jackson, Kansas City, for respondent.

VAN OSDOL, Commissioner.

Action for personal injuries sustained when plaintiff fell as she was going down the stairway upon her departure from the balcony restaurant in defendant's store. Plaintiff alleged her injuries were due to negligence of defendant in permitting water to remain on the stairs, or in failing to warn plaintiff of the presence of the water which, it was alleged, caused the stairs to be slick, slippery and dangerous, and not reasonably safe. A jury returned a verdict awarding plaintiff $13,000 in damages, and defendant has appealed from the ensuing judgment.

Defendant-appellant contends the trial court erred in overruling defendant's motions for a directed verdict, in instructing the jury, and in the admission of evidence.

Defendant-appellant also contends the jury's award was excessive.

Defendant's store on Walnut Street in Kansas City is on the west side of the street, and as a patron or customer of defendant's balcony restaurant passes from the sidewalk into the store, the patron walks through two double front doors, and turning to the left walks southwardly approximately seventeen feet. Here the patron is at the foot of the stairway leading to the balcony restaurant; and again turning to the left in proceeding up the stairway the patron moves up five steps to a landing and thence, turning to the right around a newel post and banister, moves up a flight of steps to another landing from which the patron, again turning to the right, moves up three steps (including the step to the balcony-floor level) to the balcony-restaurant floor. The steps to the balcony-floor level are a little more than three and one-half feet in width; the depth of the treads is ten and one-half inches; and the risers are seven inches high. There is no defect in construction, and the steps are covered with a type of linoleum tile which is said to be reasonably safe as a covering of stairs and floors in stores.

In the morning of December 23, 1953, plaintiff was downtown shopping. It was a little after eleven o'clock when she arrived at Wolferman's for lunch. She had patronized the store for years, and had dined at the balcony restaurant many times. The day was clear, but there was an accumulation of four or five inches (or more) of snow on the ground which had fallen the two preceding days. The snow generally had been cleaned from the sidewalks, but there was, nevertheless, slush on the walks tracked on by pedestrians who had walked through snow and slush in crossing the intersections of streets. Plaintiff wore galoshes, the kind that "zip up in front."

Plaintiff testified that, as she went up the stairway to the balcony restaurant, there were other people going up "before and behind" her. There were quite a lot of people in the restaurant at the time,

and other people continued to come into the restaurant while plaintiff was having lunch. (Six hundred and one persons patronized the defendant's balcony restaurant December 23, 1953.) At twelve forty-five, plaintiff, having eaten, approached the cashier's desk on the right side of the "stairway going down" and paid for her lunch. She retained in her right hand two dollar bills of the "change," returned to her by the cashier, in anticipation of making minor purchases as she was going down through the ground-floor store; she also had a small paper package or bag in her right hand; her purse was "on" her left hand. No other person was going up or down the stairway at the time. She had never paid any attention to the railing along the right side of the stairway (as one goes down), although she knew of the banister on the left. As she stepped down she saw a "shininess, but it didn't register with me at the time it was water and I was on it (the first step below the balcony floor) and then I fell down the stairs. * * * As I stepped down on the first step I slipped in this water and fell down the stairway." Plaintiff was rendered unconscious. The next thing she remembered was that she was in a sitting position on the first (or second) step above the (upper) landing, and a man was easing her right arm. The bottom of her skirt and her stockings were wet. She saw water on the stairs—"It looked like—you know what slush is, and it has melted? That is what it looked like."

One Louis Hyll, a patron, testified that he saw plaintiff when she was "in the middle or beginning of her fall." She fell face downward on the landing. The witness and another went to her assistance. The witness said that in assisting plaintiff he was reluctant to kneel on the steps because of the "filth and dirtiness of the traffic that was on the steps * * * sort of a dampness and dirt generally. Now that is just from traffic, slush mostly, I would say, that was tracked in." He further described the "dampness and dirt"

as a combination of salt and cinders "or something they put on the streets in order to keep things from slipping, and it was sort of dirt and soot mixture and black and it was damp."

Plaintiff's husband testified that, when he learned of his wife's injury, he immediately went to defendant's store. When he arrived his wife was sitting on the first or second step below the balcony floor. A man (Louis Hyll) was supporting her right arm. The husband was informed that a physician and an ambulance had been called, and during the ten minutes which elapsed before the ambulance arrived, the husband knelt beside the wife. He observed that the steps "clear up to the balcony level" were wet. "Right away I felt the water on my knees, the dampness coming through to my skin."

Defendant's balcony-restaurant manager, testified that the store floor and the steps of the stairway were cleaned, mopped and dried each morning before ten o'clock in anticipation of the opening of the store at ten and the restaurant at eleven. Thereafter, during the day there was no periodic inspection; although there is a boy on duty all the time on the first floor to pick up or clean anything that is spilled, or if it is raining to mop up. The witness and others in defendant's employ wouldn't have occasion to go up and down the stairway very often in the course of a day, but, "Well, we would just try to watch those things. If they (the steps) got wet or any moisture on them have them wiped up. The same way with the floor."

When plaintiff slipped, fell and was injured, she felt a "click" in her right arm and experienced severe pain. She had suffered a subglenoid dislocation of the right shoulder, the ball or head of the humerus was completely dislocated; a fracture of the tubercle of the humerus; and a tear in the joint capsule which holds the two sections of the joint together. In the fracture of the tubercle, a fragment of a bone three-fourths of an inch by one-half inch was

completely detached from the shaft of the bone. Normally the muscles initiating abduction, that is, raising the arm outwardly, are attached to the tubercle. There also was nerve involvement due to the stretching of the brachial plexis, the nerves that go from the shoulder out into the arm.

Plaintiff was taken by ambulance to the hospital and to the emergency room where she was given sedatives and narcotics to ease her excruciating pain. She was prepared for and brought to surgery, given an anesthetic and the dislocation reduced. By means of a body cast from the shoulders down to the hips, with spica or strut to hold the arm in abduction, the bone fragment was maintained in apposition during the process of healing. Plaintiff was in the hospital twenty-one days; and the cast was removed in approximately seven weeks.

Defendant-appellant, in urging the insufficiency of the evidence to make out a case for the jury, argues that the mere presence of water on the stairway without evidence of defective construction, or of worn or slippery floor covering, or other unsafe conditions, does not constitute evidence "of an actionable condition"; that no substantial evidence supported a finding that the presence of water rendered the stairs slippery, dangerous, and not reasonably safe; that the danger due to the presence of water on the stairs was obvious, and as well known to plaintiff as to defendant; and that plaintiff, as a matter of law, was guilty of contributory negligence.

Defendant-appellant says that in plaintiff's petition, in her testimony and in the principal verdict-directing instruction given in her behalf, "water" is the only substance alleged, stated and submitted as causing the stairs to become slippery, dangerous and not reasonably safe. But, says defendant-appellant, actually plaintiff's evidence did not show the presence of water alone—her evidence showed a combination of water or moisture plus an abrasive, or something "to keep things from slipping"; however, defendant-appellant says that,

even so, had plaintiff's evidence shown water or moisture alone, then, under the evidence and plaintiff's theory of the case, plaintiff failed to make out a submissible case. In support of these assertions defendant-appellant cites Williams v. Kansas City Terminal R. Co., 288 Mo. 11, 231 S.W. 954, 955, wherein this court stated that plaintiff in that case offered no evidence tending to show that the slipperiness (of the steps on which that plaintiff fell) arose from the material of which the steps were constructed, or from the manner in which they were constructed, or from their having become worn or out of repair. And it was admitted that the steps were equipped with safety treading. The only evidence introduced in that case as to the condition of the steps was plaintiff's testimony that the steps were wet; but plaintiff in the Williams case not only testified that the steps were wet, she said, "You could see the tracks of people, mud tracks I think, you could see the tracks plain, and they were wet." Moreover, the wet, muddy tracks of people could not have been on the steps very long—only after the gate was opened to permit plaintiff and other passengers to pass down the stairway to board defendant's train. Had plaintiff Williams been the first to go down the steps after the gate was opened, she, no doubt, would have found them dry, but at least some of the passengers had preceded her. In these circumstances it was unreasonable to impose on defendant (the legal status of which defendant was likened unto that of an occupier or possessor of land or the proprietor of a store) the duty, in the exercise of ordinary care in keeping the steps in a reasonably safe condition, to take the precaution of mopping the steps after each individual passenger walked down the stairs. See also Heidland v. Sears Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795, cited by defendant-appellant. Of the Heidland case, it is unnecessary for us to say that plaintiff would or would not have made a case of negligence of defendant in failing to remove the water or other foreign substance or otherwise guard against injury to

the plaintiff-invitee due to whatever dangerous condition inhered in the basement stairs and floor, had such condition been so obscured from view that it was not to be seen by an invitee in the exercise of due care. Plaintiff Heidland, who was the proprietress of a store, surely knew that water is "tracked in" a store by customers in rainy weather. The condition of the steps and floor could be plainly seen, but plaintiff Heidland didn't look at the steps or the floor, when to look was to see. It must be clear that the Williams and Heidland decisions did not turn on any ruling that a walk, a floor, or the steps of a stairway may not in any case be rendered dangerous and not reasonably safe by the presence of water thereon. The presence of water alone (or water, dampness, wet slush or slime, as the evidence tends to show was present on the steps of defendant's stairway in our case) on the variously covered surfaces of floors, or of the stairs in stores, has been recognized, in the physical settings and the shown circumstances of cases, as supporting the inference of a condition dangerous and not reasonably safe for the invitee's use. Clifford v. F. W. Woolworth Co., Mo. App., 201 S.W.2d 416, certiorari quashed State ex rel. F. W. Woolworth Co. v. Bland, 357 Mo. 339, 208 S.W.2d 263; Bankhead v. First Nat. Bank of St. Louis, Mo.App., 137 S.W.2d 594, certiorari quashed State ex rel. First Nat. Bank of St. Louis v. Hughes, 346 Mo. 938, 144 S.W.2d 84; Hubenschmidt v. S. S. Kresge Co., Mo.App., 115 S.W.2d 211; Belzer v. Sears, Roebuck & Co., Mo.App., 76 S.W.2d 701. Nor is it essential to a plaintiff's case that there be evidence introduced that the water rendered the surface of the stairs slippery and dangerous. It is common knowledge that various surfaces are slippery when wet; and a jury may infer that a wet, slippery surface, in some circumstances, is not reasonably safe for an invitee's use. By analogy—in Wagner v. Missouri-Kansas-Texas R. Co., Mo.Sup., 275 S.W. 2d 262, 265, a carrier-passenger case, plaintiff stepped in a puddle of water, slipped and fell in a restroom on defendant's

train. The evidence was substantial in tending to show that the presence of the water was at least a directly contributing cause of plaintiff's injury. This court said, "And, whether the floor surface was rough or smooth, the jury could reason *from the facts adduced, and from their common knowledge,* that a puddle of water which caused one to slip in the particular circumstances under which plaintiff slipped, constituted a condition which was likely to cause a reasonably careful person to slip and fall and that defendant so knew or in the exercise of the highest degree of care for the safety of its passengers, should have so known." (Our italics.)

As we see it, the liability of a proprietor of a store for a condition of his premises allegedly dangerous is to be determined by the law of possessor or occupier of land and invitee as applied to the facts of the case. This brings us to the statement of the rule which puts upon the occupier or possessor of land or the proprietor of a store the duty to exercise ordinary care to keep his premises in a reasonably safe condition for an invitee's use. The basis of the defendant-proprietor's liability is defendant's superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care should not know. Such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant. And in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning. Wattels v. Marre, Mo.Sup., 303 S.W.2d 9; Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756; Cameron v. Small, Mo.Sup., 182 S.W.2d 565; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723.

In the instant case, there was evidence tending to show that slush was tracked into defendant's store and up the stairs to the restaurant. The slush had melted, more or less, so that the stairs of the stairway were moist or wet all the way up

to the balcony-floor level. Patrons had been admitted to the restaurant at approximately eleven o'clock, and plaintiff passed up the stairway to the restaurant soon after that hour, had a leisurely lunch, and then in departing slipped and fell and was injured on the wet, slushy step of the stairs. Defendant had cleaned and mopped the stairs prior to the opening of its balcony restaurant, but the evidence indicates that no particular inspection was made of the stairs after the balcony restaurant was opened. Patrons, who had come into the store from the street and had passed up the stairway to the balcony restaurant, tracked in the water and slush rendering the steps of the stairway wet, slushy and slippery in the approximate hour and three-quarters during which plaintiff remained in the balcony restaurant. It reasonably could be found that defendant, the proprietor of a store, who often must have observed that patrons tracked in water and slush in wet, snowy weather, should have anticipated the presence of water, moisture or slush on the steps of the stairway and that its presence probably would create a condition dangerous to a patron passing up or down the stairway, although such patron was in the exercise of due care. Defendant's witness, the manager of the balcony restaurant, testified that defendant took the precaution of mopping water from the floor of its store; and that defendant mopped the stairs when it was observed that they had "got wet or any moisture on them"—this was evidence supporting the inference of defendant's recognition of the dangerous condition of its stairs when wet and slushy. Considering the evidence of the time which elapsed from the opening of the restaurant at eleven and plaintiff's fall on the stairs at approximately twelve forty-five, and of the passage of patrons up and down the stairway after the restaurant was opened and before plaintiff fell, it could be reasonably inferred that the water, moisture or slush had been tracked in and remained on the stairs for a sufficient length of time for the defendant, in the exercise of ordinary care, to have known of the presence of water and slush and to have mopped or cleaned the steps or warned plaintiff of their wet, slippery, dangerous condition.

■■ We also have the opinion that we should not say that the presence of the water or slush was obvious or as well known to plaintiff as to defendant, and we further believe it should not be said, under the evidence considered from a standpoint favorable to plaintiff, that plaintiff, as a matter of law, was guilty of contributory negligence. In this case, we believe these questions were for the jury. It has been noted that a patron of the balcony restaurant in departing approached the cashier's desk near the head of the stairway; but it may be inferred a patron has no commanding view of the surface of the steps until the patron approaches the head of the stairway and starts downstairs. It surely may not be said that, as a matter of law, the patron-plaintiff, invitee, had the knowledge or the means of knowledge of the condition of the steps as did defendant. Plaintiff, having approached the cashier's desk and having paid for her lunch, was somewhat engrossed, as one might expect her to be, in handling the change returned to her by the cashier and in adjusting the small parcel and her purse in her hands or on her arm preparatory to and in her departure immediately down the stairs; and we think the evidence does not conclusively show that she did not look where she was going. The inference is permissible that she did look, because she testified that she saw a "shininess" on the stairs, although she did not realize the shininess was water—here is one evidentiary basis for the inference that the wet, slippery, dangerous condition was not obvious. Plaintiff did not utilize the banister on her right or the railing on her left in stepping down to the first step below the balcony-floor level on which step she slipped and fell. She chose to "walk down the middle of the stairway." We believe, in the circumstances of this case, the fact that she did not use the banister or railing to support her in moving down the stairway is insufficient to convict her of negligence, as a mat-

ter of law. We do not wish to say that one as a matter of law is negligent in failing to utilize a railing or banister of a stairway where there is no obviously dangerous condition; and plaintiff-invitee in moving down the stairs was not obliged to anticipate and guard against a dangerous condition, which was unknown to her and was not obvious, and which was due to the negligent failure of defendant-inviter to keep its premises reasonably safe for her use.

In our opinion, plaintiff made out a case for the jury and the trial court did not err in overruling defendant's motions for a directed verdict.

Defendant-appellant contends the trial court erred in giving plaintiff's principal verdict-directing Instruction No. 1, which was as follows,

"The Court instructs the jury that * * * it was the duty of the defendant, Wolferman's, to exercise ordinary care for the safety of its customers and invitees and to exercise ordinary care to warn them of any dangers, if any, known to Wolferman's, if so, or by the exercise of ordinary care on its part should have been known to it, and unknown, if so, to its customers and invitees.

"Therefore, you are instructed that if you find from the evidence and decide that * * * the plaintiff Mrs. Margaret Stafford, went into Wolferman's place of business as a customer to, and did, have her lunch there, and the same was paid for to Wolferman's, and if you further find from the evidence and decide that she was at all times while in said store and restaurant exercising ordinary care for her own safety, and if you further find from the evidence and decide that water had accumulated on the stairs leading from the balcony restaurant to the first floor of the premises and that the stairs were wet with water and because thereof were not reasonably safe for the customers, including Mrs. Staf-

ford, to walk on but were dangerous and slippery, if you so find, * * * and if you further find from the evidence and decide that Mrs. Stafford was not warned, and did not know of the water on the steps, and if you further find from the evidence and decide that Wolferman's, by and through its agents and servants, knew, or in the exercise of ordinary care for the customers, could have and should have known that water was on the stairway (if you find from the evidence and decide it was there) in time to have removed the water, if any, but that the defendant negligently, if so, failed to do so, and if you find from the evidence and decide that Mrs. Stafford, as a direct result of the negligence, if any, of the defendant, Wolferman's, as herein submitted, was caused to fall and be injured, then you are instructed that in such circumstances, if you so find them, your verdict must be in favor of the plaintiff and against the defendant."

■■ At the outset it is noted that the first paragraph of the instruction, in purporting to abstractly state defendant's duty to its invitees, advised the jury that defendant had the duty to exercise ordinary care for the safety of its invitees; however, the abstract statement continued by purporting to advise as to the dangers of which defendant had the duty to warn, as follows, "and to exercise ordinary care to warn them of *any* dangers" known to defendant, "or by the exercise of ordinary care on its part should have been known to it, and unknown * * * to its customers and invitees." But the inviter is not liable for failing to warn of a danger known to it and unknown to the invitee if the danger is so apparent that it would or should have been known to the invitee. Otherwise stated, " * * * in the usual case, there is no obligation to protect the invitee against dangers which are known to him, *or which are so apparent that he may reasonably be expected to discover them* and

be fully able to look out for himself." (Our italics.) Prosser on Torts, 2d Ed., § 78 at page 459. To the extent the drafter of the instruction undertook to extensively and abstractly state defendant's duty as a legal premise to the submission of plaintiff's case, he should have correctly and completely stated the extent of the duty. To have more correctly and completely stated defendant's duty to warn, the drafter of the instruction should have added a qualifying clause in effect, as follows, "and would not have been known to its customers and invitees in their exercise of ordinary care." See again Wattels v. Marre; Douglas v. Douglas; and other cases cited supra. Absent such a qualifying clause, the abstract statement of defendant's duty was incomplete and erroneous. In the careful reading of the following paragraph which hypothesized facts and submitted plaintiff's case to the jury, it is seen that the incomplete statement of the extent of defendant's duty to warn was not corrected or completed in the submission. While it is submitted in the instruction that plaintiff was not warned and did not know of the water on the steps and that defendant "knew, or in the exercise of ordinary care for the customers, could have and should have known that water was on the stairway," there was no clause to the effect that plaintiff could not or would not have known thereof in the exercise of ordinary care on her part. (It is further observed the instruction submitted knowledge that "water" was on the stairs rather than knowledge of the "dangerous condition." However, we here treat the instruction as if the words "dangerous condition" were substituted for the word "water.")

We think it is plainly seen that the instruction directed a verdict for plaintiff and against defendant for failure to warn of a dangerous condition which was known to defendant, or which would or should have been known to the defendant in the exercise of ordinary care, and which was unknown to plaintiff, although the jury may have believed that, although plaintiff had no actual knowledge of the dangerous condition, such dangerous condition was such as reasonably would have been observed by an invitee in the exercise of ordinary care. This phase of the law of occupier or possessor of land or proprietor of a store, inviter, and invitee is not only important in determining contributory negligence which the Instruction No. 1 in our case in effect negatives, but it is also important in determining whether the dangerous condition is one which the inviter should believe the invitee would not discover and as to which, therefore, the inviter must use ordinary care to warn the invitee. Restatement, Torts, § 343. In seeking to justify the giving of the instruction, plaintiff-respondent cites Wattels v. Marre, supra, in which this court held sufficient the Instruction No. 1, given at the request of plaintiff Wattels, although the instruction contained no clause requiring a finding "'that plaintiff would not have known of the defect (in the steps) by the exercise of ordinary care.'" But as a condition to a verdict for plaintiff in that case, plaintiff's Instruction No. 1 required the finding "'that said step was located in an area that was dark, dim and not adequately lighted so as to enable plaintiff to see and discern the presence and condition of such step and that plaintiff was not aware thereof * * *.'"

Defendant-appellant contends the instruction was erroneous in other respects. We shall not prolong this opinion by discussing these contentions which counsel no doubt will consider, and, if other errors as contended are apparent, they may be avoided upon retrial.

Attending the contention that the trial court erred in the admission of evidence —over objection, plaintiff testified that she has experienced nightmares in which she has screamed and has had the sensation of "always falling down the steps." Plaintiff's husband testified, over objection, that plaintiff, at nighttime after the husband had made her comfortable for sleep, would

"scream that she was falling down that stair again."

A physician testified that in treating plaintiff he had administered an estrogen, female hormone, to relieve plaintiff's nervous and depressed condition. Such a treatment is an "empirical" thing in the treatment of women of plaintiff's age for complaints of nervousness and depression. Plaintiff responded to the treatment and and "got very much better." However, in plaintiff's case, there was a complication. The treatment caused a recurrence of the menstrual flow, and the physician withheld further use of estrogen. He then gave her injections of pituitary extract, and this latter treatment seemed unsuccessful.

Originally plaintiff had not alleged "nervousness" as a result of her injury. Plaintiff had alleged that she has suffered "and will continue to suffer, very great bodily pain and mental anguish, and has lost, and will in the future continue to lose, her natural rest and sleep." But the trial court permitted plaintiff to amend by interlining the words "and nervousness" after the word "anguish." Defendant-appellant strenuously contends the trial court erred in admitting evidence of the screaming nightmares, and of the recurrence of the menses. It is said the evidence was of special damages not specifically pleaded.

Plaintiff's counsel had introduced the evidence of the recurrence of the menses in connection with "the nervousness. We don't claim it's a female injury of any kind." We have the opinion the evidence of nightmares was evidence of plaintiff's "nervousness" as alleged by amendment, and that such evidence also tended to sustain the allegation of the loss of natural rest and sleep. With respect to the evidence of the recurrence of the menses—the doctor was treating plaintiff for nervousness due to her injury. Plaintiff responded to the initial treatment, but with the other and adverse result of the recurrence of the menstrual flow. Different treatment had no satisfactory result in relieving her nervous and depressed condition. We think this evidence was admissible as tending to show the nature and extent of plaintiff's injury and its effect on her, the individual plaintiff, in that it tended to show the difficulty of relieving her of her nervousness by medical treatment. We hold the trial court did not err in admitting this testimony.

Was the jury's award of $13,000 excessive?

There was evidence tending to show that plaintiff, fifty-four years old when injured, had been in good health. Plaintiff was an excellent housekeeper; did all of her household work; and was a marvelous cook. She and her husband were born in Scotland. They came to the United States in 1921, and in due course became naturalized citizens. Plaintiff had been active in the work of the Council of Naturalization of which she was a director. Those active in the work of the Council appear in naturalization cases and "say a word of welcome to these new citizens." Plaintiff was also active in church work; she helped prepare and serve dinners at the church; an accomplished pianist, she played the piano for her Sunday School class and upon occasion played solo, and accompaniments for vocalists. The nature of her injuries has been stated supra. There was evidence that, due to her injuries, plaintiff has between fifty and seventy-five percent disability of the normal use of the right arm and hand. Her hand is now held somewhat rigidly in a claw-like position. There is loss of flexion and abduction of the fingers, and the skin of the hand is "shiny." These conditions are permanent, and may become worse. It was almost a year before plaintiff could do anything around the house. She has not succeeded in having a great deal of muscular improvement in her hand since the removal of the cast some seven weeks after her injury, although she has exercised and practiced physical therapy, including massage. With her right hand she can't pick up anything heavy, such as a cooking utensil;

and it is difficult for her to hold anything small, such as a needle. She can now do only light housework, such as dusting; and she can cook a little using her left hand. She still experiences continuous pain and numbness in the right arm "from the shoulder clear down," and feels nervous and ill, generally. She has "worked on" playing the piano—she can play "but not very good." She has been obliged to forego her activities in the work of her church and in civic affairs.

■ Plaintiff, a housewife, was not engaged in any employment yielding a salary, and no loss of salary or other special damages such as medical expenses and expense for hospitalization were shown. But we have no doubt the evidence supra, which we shall not restate here, tending to show the nature and extent of her injuries, considered from the standpoint most favorable to plaintiff, demonstrates the permanency and painfulness of her injuries, and they may be progressive. On the issue of the excessiveness of the award, the nature and extent of plaintiff's injuries as well as the personal inconvenience and handicap resulting therefrom may be taken into account by a jury, by a trial court, and upon appeal, by an appellate court, regardless of the absence of evidence of special damages. Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d 120. And we suppose the jury and the trial judge may have also considered, in making and approving the award, plaintiff's anguish in being obliged to forego her church and civic activities and her music, and in the loss of the prideful efficiency with which she had formerly performed her housewifely duties, as well as the embarrassment she must suffer because of the physical aspect of the unnaturally glossy and claw-like right hand. Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353; Jensen v. Kansas City, 361 Mo. 967, 238 S.W.2d 305.

■ In full recognition of our rule of reasonable uniformity of awards, we here say we have the view the embarassing incidence of the aspect of plaintiff's right hand; her continuing nervousness; and the difference in the ages of the respective plaintiffs justifies the difference in the amount of the jury's award which the trial court approved in our case and the amount, $9,000, which this court allowed, upon appeal in the Burr case.

■ Reasonable compensation for plaintiff's injuries is difficult of admeasurement in money. The determination of the amount of the award was the concern of the jury, primarily. The jury, and the trial judge who approved the verdict, were in at least as good a position as are we to exercise the discretionary function of assessing reasonable compensation; and, since we believe the jury's award which the trial court approved was not so grossly excessive as to manifest an abuse of discretion, we rule the instant contention adversely to defendant.

■ No error is apparent in the trial of the issue of damages, but the judgment should be reversed and the cause remanded for a retrial of the issue of liability only.

It is so ordered.

COIL, C., concurs as to the submissibility of plaintiff's case and as to error in Instruction No. 1, but dissents as to remand for retrial on issue of liability only.

HOLMAN, C., concurs.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

HOLLINGSWORTH, P. J., and HYDE and DALTON, JJ., concur.

WESTHUES, J., concurs except as to remand for retrial on issue of liability only.