MATHEWS, Justice.
This case was before this Court in Sokolsky v. Feigen, Fla., 49 So.2d 88. The defendant owned a hotel. It received its power for lighting from the Florida Power and Light Company which has a monopoly for furnishing electric power in that area. The plaintiffs were guests at the hotel and on the afternoon in question, had been for a walk. The weather was bad and cloudy, which had resulted in excessive use of electricity throughout the territory served by the electric company. On returning to the hotel, plaintiffs went to their room and about dinner time decided to go down to the dining room for dinner. They noticed the lights were very dim; when they got in the hall they could hardly see; they discovered the elevator was not running; many other people were in the hall; the plaintiffs, with others, decided to use some steps to go down to the dining room; they could not see as they entered the steps; the place was pitch dark. The wife de *770 scended the first flight of steps successfully; all flights of steps were the same; somewhere between the flight of steps going from the second floor to the first floor, she put her foot down and felt no step; she did not turn back, she got excited, took a misstep and fell in this darkened place. She and her husband brought suit against the hotel.
The failure to comply with the rules and regulations of the City Code and the State Hotel Commission, and the testimony of the experts, appear to have been of primary importance in the first trial of this case. In its opinion this Court said:
“ * * * The proximate cause of her injuries was alleged to be that ‘defendants carelessly and negligently failed to provide lights or emergency lights for said stairways, together with a separate service for such emergency lights’ as required by the rules and regulations of the State Hotel Commission. From a verdict and judgment for the plaintiffs, the defendants have appealed.
* * * * * *
“It is conceivable that the exigencies of some situations might authorize a trial judge to withdraw from the jury the question of plaintiff’s contributory negligence in proceeding down an unlighted stairway, but no such emergency is here apparent. Nor, on the other hand, can it be said that, as a matter of law, Mrs. Feigen was guilty of contributory negligence in so proceeding. It is true that Mrs. Feigen made no effort to obtain a flashlight, or candles, or any other means of illumination, but it is also true that other guests were proceeding down the stairs, both in front of her, and behind her, and that this stairvyay was the only means of descending to the first floor when the elevator was not working. We think that the circumstances here presented bring this case within the general rule that contributory negligence is a question for the jury. See Felshin v. Sir, 149 Fla. 218, 5 So.2d 600, 602; Steele v. Independent Fish Co., Inc., 152 Fla. 739, 13 So.2d 14; Turner v. Modern Beauty Supply Co., Inc., 152 Fla. 3, 10 So.2d 488.”
■ In the second trial the building code of the City and the rules and regulations of the State Hotel Commission and of expert witnesses, as to noncompliance with such rules, were not in evidence and not before the Court. In addition to that, it appears from the evidence in the second trial, which did not appear in the first trial, that the defendants knew there was a telephone in their room; their room was only 10 feet from the stairway; there was nothing to prevent them from calling the desk clerk and asking for a light or asking that their meals be sent to their room, or waiting a few minutes or even a few hours to satisfy their hunger. Therefore, the testimony on the second trial was materially different from that on the first trial and the question of negligence on the part of the defendant, or contributory negligence on the part of the plaintiff was not settled in the first opinion by this Court and was not withdrawn from a further consideration or determination of these questions by the trial Judge as questions of law upon a different state of facts and with different testimony.
The excessive use of electrical power on the occasion was beyond the control of the defendants. The electric power company was a monopoly, subject, however, to rules and regulations of the proper public authorities ; the defendant was dependent entirely upon this public utility for electric power. The question of emergency electrical switches would be of importance only if the breakdown was in the hotel and the emergency switch would connect with some other line; it could be of no service when the power failure, or power shortage, was throughout the whole area served by the public utility company because of excessive use, storms, cyclones or a breakdown at the power plant.
It is not shown that any emergency existed which would require the immediate departure of the plaintiffs from 'their room— a place of safety — into a place of danger— pitch darkness going down a stairway with which they, were not familiar. It is conceivable that .there could have been an emergency requiring their immediate depar *771 ture from their room stjch as a fire, a hurricane, flooding the room, or destruction of the building, but a desire to satisfy an immediate and present appetite is not such an emergency. It may have been more pleasant to go downstairs into a dining room and eat food at the particular hour, but this did not constitute an emergency. It is well known and the Court should not close its eyes to the fact that people have gone for a few minutes, a few hours, or even a few days without satisfying the pangs of hunger without disastrous results.
Unless the first opinion so effectively established the “law of the case” that the trial Judge had no discretion in determining or deciding whether or not there was any evidence showing negligence on the part of the defendant or contributory negligence on the part of the plaintiffs, when the evidence was different at the two trials, then the case should be affirmed.
The appellants have cited the case of McGregor v. Provident Trust Co. of Philadelphia, 119 Fla. 718, 162 So. 323, 327, as authority that the “law of the case” was settled by our first opinion. That case is authority that “whatever is once established between the same parties in the same case continues to be the law of the case, whether correct on general principles or not, so long as the facts on which such decision was predicated continue to be the facts in the case.” (Emphasis supplied.) The facts or evidence upon which the first opinion in this case was predicated are not the same on this appeal. There can be no “law of the case” which is controlling when the facts are different at the two trials, as they are in this case.
There is nothing in the record in this second trial to show any negligence on the part of the defendant or from which a jury could infer that the defendant had been guilty of negligence.
On the other hand, all of the undisputed testimony in the second trial shows that the injuries complained of were the result of the negligence of the plaintiff.
The undisputed testimony shows that the plaintiffs had the same knowledge as to the condition of the electric lights in general that the manager of the hotel had. The plaintiffs, being on the third floor and having gone to the elevator and finding that it was not in operation and then observing the condition of the stairway, had more and better knowledge than the manager of the hotel as to the darkness of the stairway. They had never been on the stairway before and it must be assumed, therefore, that they did not know the condition of the steps, how deep the drop was from each step, how many platforms there were and other physical conditions. Their lack of knowledge of these conditions and with the knowledge that the stairway was pitch dark, put them on notice that they would descend these steps at their peril and if they attempted to do so, they should take proper precaution for their own safety. The steps, platforms, and other physical conditions were identical as to each flight of stairs from floor to floor. There is no complaint that the steps were slippery or uneven or had broken places or that any other physical condition existed which caused the fall. Entering the stairway in pitch darkness, her failure to back up or take other precautions when danger was obvious, coupled with her admitted fright, caused the fall.
The case of Turner v. Modern Beauty Supply Co., 152 Fla. 3, 10 So.2d 488, and other cases cited by the appellants, are not applicable in this case because they clearly showed conflicts in the testimony on the' question of contributory negligence.
This Court has settled the question of contributory negligence and when such question should or should not be submitted to a jury in a number of cases. We had a similar situation in the case of Norman v. Shulman, 150 Fla., 142, 7 So.2d 98, 99, In an opinion by Mr. Justice Thomas, the Court said:
“The principal obstacle to recovery on the part of the plaintiff, however, seems to us the negligence which she contributed to her own injury.' When she attempted to descend the steps she had already passed through the unlighted hallway and lobby. As she left the building she was aware of the darkness of the entrance and yet she accepted the situation and chose to go forward *772 in the dark. No effort was made to secure a light and actually her damage is traceable to her own miscalculation. * * * tf
It may he said in this case the plaintiff was aware of the darkness and yet she accepted the situation and “chose to go forward in the dark. . No effort was made to secure a light and actually her damage is traceable to her own miscalculation.”
It should be borne in mind that this case is entirely different from that of Dempsey-Vanderbilt Hotel v. Huisman, 153 Fla. 800, 15 So.2d 903, and other cases of like nature, where a defect in construction, or then existing physieal condition of the involved steps or stairway, caused the injury. There is no such contention in this case.
The doctrine laid down in the case of Norman v. Shulman, supra, was re-affirmed in the case of Westerbeke v. Reynolds, 155 Fla. 2, 19 So.2d 413, 414, where the Court specifically held that the owner of a building was not liable for injury received “ ‘when she fell in leaving unlighted entrance after misjudging width of a step.’ ”
The case of Matson v. Tip Top Grocery Co., Inc., 151 Fla. 247, 9 So.2d 366, 368, involved the duty of an invitee. In that case .the Court said:
“ * * * It is to be observed that we are not dealing with a hidden danger. The duty which the plaintiff owes to herself is to observe the obvious and apparent condition of the premises. If she is derelict in observing the step down, she surely cannot complain that she was not warned, tier neglect to any appreciable extent which contributed to the injury' is a complete bar to her recovery. * * * ”
In the case of Tutwiler v. I. Beverally Nalle, Inc., 152 Fla. 479, 12 So.2d 163, 164, this Court affirmed the judgment of the lower Court, holding that an amended declaration did not state a cause of action. The declaration alleged the following facts which were admitted to be true by the demurrer: the plaintiff was inspecting a house as a prospective tenant; she entered into a living room and a passageway from the living room into a kitchen; a stairway w;as constructed to the left of the passageway with a door beneath the stairway; the door opened inwardly upon a flight of stairs to a cellar; the floor level of the passageway did not extend beyond the door and the first step of the stairway leading into the cellar was- constructed below the level of the floor; there was a sudden drop from the level of the passageway; the cellar stairs were constructed at an approximately forty-five degree angle, and on the date in question were precipitous, dark and unlighted; there were indications due to the type of construction of the door that the same was the entrance into a closet rather than an entrance into a cellar; the door was unlocked; the plaintiff had no knowledge of the conditions of the house, and the defendant failed and omitted to notify or warn her of any dangerous condition of the premises, or about the steps going into the cellar. While on this inspection trip, as a prospective tenant, she opened the door and passageway to the cellar and fell a distance of 8 or 10 feet into the cellar; she alleged that she was free from fault and the proximate cause of her injuries was the negligence of the owners of the property in permitting or allowing the property to remain in the dangerous condition as described in the declaration, coupled with the rental agent’s careless and negligent failure to warn or notify her of this condition. This Court said:
“ * * * the darkness confronting her when opening the door to the cellar or basement was sufficient notice to warn her of dangers which she was unable to see. If the door opened into a closet as suggested, the use thereof as a tenant, would only be incidental and not recognized as controlling in connection with rental property. The failure of the ' appellant to exercise ordinary care for her own safety when inspecting the property by opening a closed door and taking a. step forward into a dark and unlighted stairway, thereby contributing to her own injury, as a matter of law, will preclude a recovery on her part under the allegations appearing in the amended declaration.”
(Emphasis supplied.)
*773 The case of Miller v. Shull, Fla., 48 So. 2d 521, 522, was a bathtub — hotel case. A demurrer to an amended declaration was sustained and final judgment entered by the lower Court which was affirmed by this Court. The declaration alleged that the defendant violated its duty to exercise all due care and caution to have plaintiff’s room and private bath thoroughly cleaned before assigning the room to her; and failed to remove a slippery substance from the bottom of the tub which caused her, when she stepped into the tub, to slip and fall. The plaintiff moved into the room on March 29th and the accident happened on March 31st. There was another count in the declaration in which she alleged all of the same facts, with the additional fact that the defendant “had promised to provide daily maid seryice and had failed to thoroughly clean the bath tub * * * ”, etc. After discussing the corresponding duties of an innkeeper and a guest, in an opinion by Mr. Justice Roberts, the Court said:
“ * * * Thus, while a hotel guest, or other business invitee, is entitled to expect that the proprietor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions, the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. * * *
“ * * * Plaintiff must have known, since it is a matter of common knowledge — and. one which most of us know through painful experience — that a small amount of water in the bottom of a bath tub creates a slippery condition; and we think we may safely say that any reasonably prudent person makes at least a cursory examination of the condition of a bath tub before stepping into it.
“ * * * From the allegations of the declaration in this case, it appears that the plaintiff’s injuries were the result of her own failure to exercise ordinary care, and under such circumstances the question of negligence was properly decided by . the court as a matter of law. * * * ” (Emphasis supplied.)
See also Andrews v. Narber, Fla., 59 So.2d 869.
In the case of Earley v. Morrison Cafeteria Co. of Orlando, Fla., 61 So.2d 477, 478, a customer of a restaurant sustained injuries when she tripped on a mat in the vestibule of the restaurant. The undisputed facts were that there was a rubber' or leather mat from % to y2 inch thick; the edges of the mat were bound with metal; the appellant entered the vestibule from the street and walked across the mat to a side door leading into the cafeteria; she saw a long line of persons and decided to leave and come back later; upon returning to the vestibule on her way to the entrance door, she tripped on the edge of thé mat and fell; she claimed in her declaration that the mat was hidden and concealed and that such mat with abrupt edges concealed in a vestibule constituted an extreme hazard. In an opinion by Mr. Justice Roberts, this Court said:
“While the rule is well settled that a business invitee is entitled to expect that the proprietor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions, it is equally well settled that the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. Miller v. Shull, Fla., 48 So.2d 521. ‘The law does not require a proprietor of a public place to maintain his premises in such condition that an accident could not possibly happen to a customer. Plaintiff was in turn obligated to exercise a reasonable degree of care for her own safety. * * * The duty which the plaintiff owes to herself is to observe the obvious and apparent condition of the premises.’ Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366, 368.
“ * * * If the mat was dangerous at all (which we do not decide), the danger was not latent or concealed, but patent and obvious, and the ordinary *774 use of her senses by the appellant would have disclosed it to her.”
In the case now under consideration, if the stairway was dangerous, then that danger was not latent or concealed but was patent and obvious.
In the case of MacMillan v. Insurance Exchange Bldg., Fla., 58 So.2d 163, 164, the plaintiff was a tenant of the building and had been using an elevator and was thoroughly familiar with it. On the morning of the accident the elevator was between 3 and 4 inches above the floor level; the door was open and the elevator was unattended ; a good-looking girl, who was the operator of the elevator, was about 10 feet away, playing a pinball machine; with full knowledge that the elevator door was open and unattended and that the pretty girl, at whom he was looking, was playing pinball, he attempted to enter the elevator, stumped his toe and fell. The Court said:
“In this case the evidence was legally insufficient to sustain a verdict for the appellant; there was no conflict in the evidence; and there was no basis in the evidence for different reasonable inferences. On the other hand, the undisputed testimony of the appellant and that offered by his witnesses without any conflict whatsoever showed that the appellant went into this place, with which he was familiar, seeing the elevator door open with the known attendant, or operator, not in the elevator; he saw her at least 10 feet away playing a pinball machine, and without looking at the floor or the edge of the elevator, walked into the same, stumbled, fell and was injured.”
In the case of Bowles v. Elkes Pontiac Co., Fla., 63 So.2d 769, the plaintiff entered the defendant’s place of business from a sidewalk; a door opened from a sidewalk into a showroom; there was á platform 18 inches wide immediately inside the showroom as the door was entered; there was a drop of approximately 3 inches in depth from the platform to the floor; plaintiff in stepping from the platform ,to the floor, fell and was hurt. This Court held there was no liability because any person of ordinary intelligence under the facts shown in that case had the duty and obligation to use ordinary care for his own safety and to look and see where he was going. There was no allegation in the declaration that the plaintiff in that case looked or took any precaution to see the actual condition which existed.
In the case at bar the plaintiff had actual knowledge of the dangerous condition; she left a place of safety and went into an alleged place of danger; without taking any precaution for her own safety.
The judgment should be and is hereby affirmed.
TERRELL, THOMAS, SEBRING and DREW, JJ., concur.
ROBERTS, C. J., and HOBSON, J., dissent.