Austin F. SHUTE, Adm. of the Estate of Franklin G. Wilson, Dec'd, Plaintiff-Respondent,

v.

PROM MOTOR HOTEL, INC., Defendant-Appellant.

No. 25090.

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 6, 1969.

Edmund B. Smith, Courtney W. Perkins, Meyer, Smith, Bott & Penner, Kansas City, for plaintiff-respondent.

Robert S. McKenzie, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for defendant-appellant.

SPERRY, Commissioner.

This action was commenced by Franklin G. Wilson, who filed a petition for damages against defendant, alleging injuries received when he fell down unlighted steps

in the hotel of defendant, on February 17, 1961. Mr. Wilson died in May, 1964, from causes not related to this accident. Mr. Shute, administrator of his estate, was substituted as party plaintiff. The parties stipulated that the issue of liability be tried to the court without a jury and that the issue of damages be tried to a jury. The court found for plaintiff on the issue of liability and the jury assessed damages at $10,000.00. From a judgment in accordance therewith defendant appeals.

The basic facts relating to the occurrence are not in dispute. Defendant operated the Prom Motor Hotel, Inc., in Kansas City, Missouri. It is a high quality modern hotel and contained 102 guest rooms. The deposition of Mr. Wilson, who will be referred to as plaintiff, was read in evidence. He occupied a fourth floor accommodation. On the morning of the accident he arose at about 5:00 A.M., when another friend left who had spent the night in plaintiff's rooms. He intended to catch an airplane flight at about 9:30 A.M. He had a breakfast appointment with a friend at the airport at about 7:30 A.M.

While he was in the bathroom the lights went out but some light came through his window from a light across the street. Within about five minutes the generator ground to a stop and he realized that there had been an electrical failure. It was learned that the failure was due to a burned out transformer, located some distance from the hotel. It was the property of the Kansas City Power & Light Company. The lights went off at 5:30 A.M.

He dressed and packed his bags by the light coming in through the window. He went out into the hall where an employee of defendant asked him what room he was looking for. Mr. Wilson told him that he was looking for the stairway. (The elevators were not operative). The employee showed him the stairway door by using a flashlight. The man said: "You had better be careful, it is dark in there, there are

no lights." Mr. Wilson assured him that he could "make it" safely, lighted his cigarette lighter, picked up his two bags and, with the use of the lighter, made his way down four flights of stairs, to what he thought was the lobby floor. He had never before used this stairway. He set his bags down, opened the door and saw a lighted candle at the lobby desk, and other candles being lighted in the dining area in the distance, operated by Eddy's, not defendant. He held the door open with one foot, put out his lighter and placed it in his pocket, picked up one bag in each hand, and started toward the desk. Unknown to him there were four stair steps leading from the landing to the lobby. He fell to the lobby floor, suffering severe injuries. He fell at about 6:15 A.M. Since no question is presented as to the amount of the judgment it is unnecessary to discuss the evidence relating to the nature and extent of his injuries.

He stated that he did not see that there was a flight of steps ahead of him, leading down to the lobby. The carpets on the steps and on the lobby floor were a bluish color, and the whole area appeared to be level. There was one candle at the desk some thirty or forty feet away; and other candles some one hundred eighty-five feet away were being lighted. He said that the only light in the lobby was from the candle and from "the break of dawn" coming through the front door; that it was sufficient for him to see so as not to walk into a post.

There are two stairways, one at the north and the other at the south end of the building. They are in stairwells, shut off from the halls by doors. The steps from one floor to the next are divided into two flights. The stairway followed by plaintiff, since the elevators were not in operation, was the only way by which plaintiff could have reached the hotel lobby.

Mr. Vogel, defendant's manager, was notified of the situation at his home and ar-

rived at the hotel at about 6:00 o'clock. He visited the fifth floor, using a flashlight. He dispatched two employees to various points up the stairways. There were at least three other employees present but we are not advised of their activities, except that one was operating the switchboard. No lights, candle or others, were placed anywhere near the stairway. Mr. Vogel stated that he had experienced several electrical failures in his experience as manager of various hotels, and that he considered the situation in this case to be an emergency. There was evidence tending to prove that the electrical construction met the requirements of the Kansas City code when it was installed.

From the evidence the court found that the stairway to the lobby of the hotel was not properly lighted and, therefore, not reasonably safe for use by defendant's guests; that defendant knew of this condition for a period of forty-five minutes prior to plaintiff's fall and could, in the exercise of ordinary care, have lighted the stairway by candle light or other means; that its failure to do so was negligence. It found that plaintiff was in the exercise of ordinary care for his own safety.

■ Plaintiff complains that defendant, in its brief, fails to point out specifically the actions or rulings the court claimed to be erroneous. Defendant's position is that there was not sufficient evidence to convict defendant of negligence; that plaintiff was guilty of contributory negligence as a matter of law; and that plaintiff assumed the risk of traversing the dark stairway with full knowledge that it was dark and dangerous. This is sufficient to inform us of defendant's contention that no submissible case was made.

■ Defendant first urges that, since plaintiff fell on an unlighted stairway, which condition was due to a power failure away from defendant's premises and outside of its control, it is not liable for negligence. Section 315.120 RSMo 1959, V.A. M.S., provides in part as follows:

"Every hotel in this state shall be properly plumbed, lighted, and ventilated, and shall be conducted in every department with strict regard to health, comfort, and safety of the guests; provided that such proper lighting shall be construed to apply to both daylight and illumination * * *".

In Restatement of Torts, Section 314A, Special Relations Giving Rise to Duty to Aid or Protect, appears the following:

"(1) A common carrier is under a duty to its passengers to take reasonable action (a) to protect them against unreasonable risks of physical harm * * *

"(2) An Innkeeper is under a similar duty to his guests".

Under "Illustrations" examples are cited indicating that, in certain instances of danger to a hotel guest, a simple failure on the part of the innkeeper or his servants to take any action will result in liability for damages. In Dalzell v. Dean Hotel Co., 193 Mo.App. 379, 186 S.W. 41, 45, it was stated that the relation of innkeeper and guest is much like that existing between a common carrier and its passengers. While he is not an insurer of a guest's safety, he is held to the exercise of a very high degree of care therefor. In Burnison v. Souders, 225 Mo.App. 1159, 35 S.W.2d 619, 623, it was said that the very thing that one bargains for when he becomes a guest at a hotel is the use of safe premises. In Cumming v. Allied Hotel Corp., Mo., 144 S.W.2d 177–181, this declaration was approved. While the landlord is not an insurer, the law protects the guest from the carelessness of his landlord even where the defect in the premises is known or is obvious to the guest, so long as the latter uses ordinary care for his own safety.

■ By statute it is made the absolute duty of the innkeeper to provide adequate

lighting on his premises, day and night. This is a positive, personal duty. "A personal duty cannot be delegated to another, so as to relieve the person bound to perform from liability for its nonperformance". Phegley v. Graham, Mo., 215 S.W. 2d 499, 503, 6 A.L.R.2d 382. In this case, defendant provided light through another independent agency. Through no fault of defendant the electricity failed, but defendant had a duty to provide reasonable light within a reasonable time thereafter. Defendant's manager stated that he had experienced a large number of situations, in conducting the hotel business, where the electricity failed. He stated that such a situation creates an emergency. Defendant had provided no substitute for the light furnished by the Kansas City Power & Light Company, except to keep on hand candles and flashlights. The lights failed at 5:30 A.M., and plaintiff fell at 6:15 A. M. During that time, forty-five minutes, no lights were provided anywhere in the hotel except one candle at the desk. Defendant knew that, with the elevators not in operation, guests had but one way to reach the lobby from their rooms above. That was by way of this particular stairway (the other stairway led to the pool). There were five employees, and the manager, on duty. Candles and flashlights were available, yet forty-five minutes passed and no lights were furnished on or near the stairway. We think it was a question for the court as to whether defendant could have remedied this dangerous condition during the time it existed, so as to protect plaintiff from falling. The court could have properly found that defendant was guilty of negligence in the circumstances shown here. In Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712, 714, failure to provide adequate lighting on a hotel stairway where a guest fell was held to be evidence of negligence.

■ Defendant's next point in its brief is that plaintiff was contributorily negligent as a matter of law "in extinguishing the lighter and proceeding into darkness when he could not see where he was walking". In response to such contention we determine whether reasonable minds might differ as to whether plaintiff was negligent. However, the parties in this case waived a jury on the issue of liability. The question of contributory negligence was determined by the trial judge. Civil Ct. Rule 73.01, V.A.M.R., requires us to review jury waived matters de novo and to make our own findings of fact from the record after giving deference to the trial court's judgment as to the credibility of the witnesses. Under this procedure we determine whether plaintiff was contributorily negligent as a matter of fact. We note that plaintiff has briefed the question as posited by the defendant, i.e., as a matter of law. Yet in order for defendant to receive all of that to which he is entitled we will determine whether plaintiff was contributorily negligent as a matter of fact. Further, a re-briefing and re-argument of this question would not be of any assistance to the court.

An additional recitation of the evidence is pertinent at this point. The only evidence pertaining to what occurred at the time plaintiff fell came from plaintiff. It was uncontradicted and, it not being contrary to physical laws or common knowledge, we take it to be true.

After testifying in his deposition as to how he descended the stairs to what he believed to be the lobby level, with the aid of his cigarette lighter, plaintiff testified: "And so I set my bags down, and I opened the door, and I could see candles * * * well, there was one on the desk and some away over in the dining area, and I could see, there was just enough light to see things as big as that column (indicating) there, or a divan or something like that, and I said 'well, this is the lobby level', so I put my cigarette lighter in my pocket and took my attache case in one hand and my bag in the other and started over to the desk." He further testified that it never occurred to him that there were any more

stairs there; that it appeared to be and he assumed it was level floor from where he was standing to the desk; that he thought he was at the lobby level. Helmut Vogel, manager of the hotel, when asked if the candles in the restaurant would have a material effect on illuminating the stairs testified: "Can I answer you this: yes, they had a definite effect, there (sic) was a cause of the gentleman more or less to misjudge himself; he saw the candles. I remember the conversation with Mr. Wilson, that he saw the candles and because of his bifocals, he misjudged the lights from where the candles came from".

■ From this evidence we are unable to believe that plaintiff was contributorily negligent. The burden is upon the defendant to present evidence that causes us to believe that plaintiff did not act with the care of an ordinarily, careful and prudent person under the same or similar circumstances when he put out his cigarette lighter and started to walk ahead. This, defendant has failed to do.

■ The deciding factor here is that plaintiff did not know that he could not see where he was walking. It is apparent that plaintiff was deceived as to the actual conditions. After successfully negotiating four flights of stairs by the aid of his lighter he thought he had arrived at his destination, the floor of the lobby. The lighted candles across the lobby created an illusion of safety. It appeared to him that he was on the same level as the lobby. Plaintiff not only could not see the steps but he was unaware that he couldn't see the steps. One cannot be found to be negligent in failing to take precautions against danger of which he is not aware and existence of which he has no reason to suspect.

This is not a case of one proceeding heedlessly in the face of known danger. Such is the distinguishing factor between this case and ones cited by defendant in support of this point. In Feigen, et al. v. Sokolsky, et al., Fla.Sup., 65 So.2d 769, the plaintiff, a guest in a hotel in which the lights had failed, entered a stairway which she knew was dark and fell and was injured. In Bond v. Kansas City Transit, Inc., Mo., 401 S.W.2d 440, the plaintiff failed to look to determine conditions which she could have seen if she had looked. In the instant case plaintiff did look but could not see the actual conditions. In Curtis v. Capitol Stage Lines Co., Mo.App., 27 S.W.2d 747, the plaintiff backed out of a bus in such a way she could not see where she was stepping and fell. In Hickman v. Missouri K. & T. Railway Co., 180 Mo.App. 1178, 167 S.W. 1178, plaintiff, walking in the dark, fell off of an elevated and unlighted railway station platform. In both of these cases the plaintiffs acted heedlessly of danger of which they were aware. In the instant case plaintiff was not aware of the danger, i. e. the fact that he was on a different level from that of the hotel desk and that he must go down four steps to reach the level of the desk.

■ It is finally contended that plaintiff may not recover because he assumed the risk of being injured. Defendant's argument is addressed to that period of time when plaintiff traversed the first four flights of stairs by the aid of his cigarette lighter. It may very well be that plaintiff assumed the risk of injury at this point because he knew he was going down unlighted stairs, but the fact is he successfully made it down these steps without injury. The injury occurred when he fell on steps, the existence of which he was unaware. In Fletcher v. Kemp, Mo.Sup., 327 S.W.2d 178, it was said that the doctrine of assumption of risk is based on the theory that one who *voluntarily* exposes himself to a known and appreciated danger due to negligence of another may not recover for injuries suffered, even though he may be in the exercise of due care for his safety at the time of the occurrence.

There must be both knowledge and appreciation of the danger. See also Turpin

v. Shoemaker, Mo., 427 S.W.2d 485. Measured by this rule the doctrine has no application here. Plaintiff did not know of the existence of the steps on which he fell. He had no appreciation of the danger because of the illusion of safety referred to above.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

CROSS, J., and FRANK D. CONNETT, Special Judge, concur.

HOWARD, P. J., dissents in separate opinion.

SHANGLER, J., not participating.

HOWARD, Presiding Judge (dissenting).

I cannot agree with the holding of the main opinion on the question of contributory negligence of the plaintiff. In this situation, the plaintiff knew that the lights were out in the hotel. By the use of his cigarette lighter, he was able to negotiate the descent of four flights of stairs in safety. When he came through the door into the lobby area, he saw candlelight in the distance. He states that he thought he was on the lobby level. He then extinguished his cigarette lighter, put it in his pocket, picked up his bags and blithely walked forward in the dark and fell down the steps. It is obvious that plaintiff could not see where he was placing his feet. It is equally obvious that if plaintiff had used his cigarette lighter as he had been doing, he could have discovered the steps and avoided falling. I cannot say that reasonable men would differ as to the negligence of the plaintiff in extinguishing his light and walking into the darkness where he could not see where his feet would fall. We are not here faced with a claim that plaintiff was contributorily negligent in initially attempting to descend from his room to the lobby in darkness. Rather, we must determine the legal consequences of plaintiff's failure to use his light so as to see where he was going, as he had just done in coming down the four flights of stairs. Although the factual situation was entirely different in Boland v. Thompson, Mo.App., 142 S.W.2d 790, it is believed that the fundamental duty of plaintiff to use care for his own safety, as set out in that opinion, is applicable to plaintiff in the case at bar. It was said in Boland, l. c. 793:

"* * * It is the duty of a person to make reasonable use of his faculties and intelligence to discover dangers and conditions of danger to which he is or might become exposed. Reasonable use of the faculties means such use as an ordinarily prudent person would have made of them under the circumstances. *When a situation suggests investigation and inspection in order that its dangers may be fully disclosed, he is under the obligation of investigating and inspecting.* The presumption is that one will observe and understand all perils that a prudent and intelligent person would observe and understand, and if he neglects to observe and consequently remains in ignorance of discoverable dangers, the fault is deemed to be his own. * * *" (Emphasis supplied)

See also O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248.

Under all the circumstances in the case at bar, it is believed that one who has the means to see where he is stepping and deliberately refuses to use such means and deliberately steps into the dark not knowing where his feet will land is negligent in so doing.

I would reverse outright.