**Margaret I. LEWIS, Plaintiff-Respondent,**

**v.**

**KANSAS CITY PUBLIC SERVICE COMPANY, Defendant-Appellant.**

No. 23039.

Kansas City Court of Appeals.

Missouri.

March 7, 1960.

Motion for Rehearing or Transfer to Supreme Court Denied April 4, 1960.

Ima M. Goehring, Thos. A. Sweeny, E. E. Thompson, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for appellant.

R. Carter Tucker, John Murphy, Wm. H. Wilson, J. Gordon Siddens, John A. Dew, C. Thomas Carr, Tucker, Murphy, Wilson & Siddens, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment against defendant in the sum of $2,500. Defendant has appealed.

On December 21, 1955, plaintiff left her place of employment in Kansas City, Missouri, around 3:15 to 3:30 in the afternoon, went directly to 10th and Main Streets, boarded defendant's streetcar and paid her fare. Her destination was 63rd and Brookside, where she intended to do some shopping and thereafter to transfer to a bus to reach her residence, 445 East 69th Street Terrace. The streetcar arrived at 63rd and Brookside, the place of the occurrence in question, about four o'clock. The weather was "slightly cloudy". Upon boarding the streetcar plaintiff paid particular attention and observed that it would only go to 63rd Street. She knew it would turn around there and return to the downtown area. Plaintiff had ridden a streetcar home from work on an average of around two days a week and always transferred to a bus at 63rd and Brookside. She knew that there was a paved area adjoining the streetcar track for passengers to leave the streetcar at the "Sixty-third Street Loop."

Plaintiff's version of what took place is as follows:

"Well, I boarded the streetcar at Tenth and Main, the Sixty-third streetcar and got a seat about middleways on the left hand side of the car, and I was seated there in my seat until the operator called Sixty-second Street, and the next stop would be Sixty-third, so I arose about half way between the stops so that I would be ready to get off; walked to the door, and was holding on to the handle—the bar that—where you go down to the door way; was standing there waiting for the streetcar to pull to a stop. I had stepped down possibly to the first—on the first step in the well, as they explained to you before, all your steps on these streetcars that I rode are on the inside of the door. I was standing there waiting for the streetcar to come to a stop and when the streetcar stopped he (the operator) automatically opened his door. There was no wait of time; he opened it automatically as he stopped, and when I started to step out—when the door opened I released my hold to the bar and started to step out and by the time I had lost my balance and started to step I saw he hadn't pulled up to this platform, but it was too late to grab anything, because I had lost my balance and was too far gone. I took a complete somersault out of the car, went completely over."

On cross-examination plaintiff testified as follows:

"Q. Now, you said something about you just assumed that the streetcar would stop up on the—where the asphalt is shown in those photographs, was that your assumption. A. Well, I presumed by him opening the door for his passengers to get off that he had his car in the proper place, being he didn't say anything about it.

"Q. Well, didn't I understand you to say that you assumed it was stopped at the asphalt, where you step on to the asphalt? A. You mean I assumed that he was up there that day?

"Q. Yes. A. Yes, I assumed that he was there, because he opened the door.

"Q. And you did not look out of the door before you stepped, did you; you were stepping before you looked? A. I was ready to step when the door opened and when I started to step I noticed he wasn't up to his platform and I had already stepped too far. I had lost my balance and therefore, consequently fell out. * * *

"Q. After you had started your step you noticed that it was gravel below, rather than the asphalt, is that right? A. That is right. I noticed that he wasn't up— * * *

"Q. You could have seen—you don't claim you couldn't see the gravel from where you were standing, do you? A. I didn't say I couldn't see it, I said I didn't see it until after I had already stepped.

"Q. You didn't look until after you had already stepped? A. That is right."

Plaintiff's theory of recovery appears in Instruction No. 1, given by the court which requires the jury to find that the "operator instead of stopping said streetcar at the regular stopping place at said intersection, it was stopped north of and short of said regular stopping zone, if so, and that the place where it was stopped was not paved but had a rock, chat and uneven surface."

We need not set out the testimony as to the nature and extent of the injuries sustained by plaintiff, inasmuch as the same is not material to the issue presented on this appeal.

Defendant makes but one point; that is, that plaintiff was guilty of contributory negligence as a matter of law in that she failed to observe where she was going to step when she alighted from the streetcar.

In the case of Fierce v. Shapleigh Hardware Co., Mo.App., 14 S.W.2d 511, 513, it is said: "Negligence is ordinarily a question for the jury. It is always so where different minds might reasonably draw dif-

ferent conclusions from the evidence as given. Negligence cannot be conclusively established, as a matter of law, upon a state of facts on which fair minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom * * *. Before a court would be authorized to declare a plaintiff guilty of contributory negligence as a matter of law, the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence in his favor."

 It is elementary that a carrier must exercise the highest degree of care for the safety of its passengers. It is also well established that stopping a streetcar and opening the doors is an invitation to the passenger to leave and an assurance that he or she can do so with safety. One of the many cases announcing this rule is that of Feldotto v. St. Louis Public Service Co., Mo.App., 285 S.W.2d 30, 32, where the following language appears:

"The action of the bus driver in opening the exit doors constituted more than a mere invitation to alight. Fillingham v. St. Louis Transit Co., 102 Mo.App. 573, 77 S. W. 314, 319; Caley v. Kansas City, etc., Public Service Co., 226 Mo.App. 934, 48 S.W.2d 25, 29; it was an assurance to plaintiff that she could alight there with safety."

Another principle of law clearly applicable to the instant case is stated in the case of Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 414, 114 S.W. 1057, 1063, as follows:

"As a general rule a man is not required to look for danger when he has no cause to anticipate danger, or when danger does not exist except it be caused by the negligence of another."

 In the case at bar plaintiff had no reason to anticipate danger. She knew that she was getting off at the 63rd and Brookside turn-around platform provided by the defendant on its own right-of-way. She knew that the streetcar had pulled off onto the turn-around. She knew that the platform was immediately adjacent to the turn-around and that it was a safe place to alight because she had alighted there many times before. She knew that the streetcar had not pulled as far forward on the loop as it could. This produces the very logical inference that the streetcar was at the platform, for had it not been so, the operator would have pulled up farther as he could have done according to her testimony. When the operator voluntarily opened the door she had an implied invitation from him to alight at a safe place. She would have alighted safely had it not been for the negligence of the operator in stopping the rear of the car a few feet short of the end of the unloading platform.

We have examined the many cases cited in defendant's brief and find them clearly distinguishable on their facts from the case at bar. And our courts have many times said that the question of contributory negligence is to be determined by the particular facts and circumstances in each case. Caley v. Kansas City, 226 Mo.App. 934, 48 S.W.2d 25, 30. Giving plaintiff the benefit of every reasonable inference that may be drawn from the evidence in her favor precludes us from holding that she was negligent as a matter of law.

The judgment is affirmed.

All concur.