**Ruth N. BOND, Plaintiff-Respondent,**

v.

**KANSAS CITY TRANSIT, INC.,**
**Defendant-Appellant.**

No. 51233.

Supreme Court of Missouri,

Division No. 2.

April 11, 1966.

Robert G. Oberlander and James B. Lowe, Kansas City, Kuraner, Oberlander, Lamkin, Dingman & O'Laughlin, Kansas City, of counsel, for respondent.

John B. Ewing, Jr., and John M. Gibson, Kansas City, Brenner, Ewing, Lockwood & O'Neal, Kansas City, of counsel, for appellant.

FINCH, Judge.

Plaintiff obtained a verdict for $32,000 for injuries suffered in a fall when she slipped on ice and snow while alighting from defendant's bus. She filed a remittitur of $12,000 and defendant appealed from the resulting judgment for $20,000.

In addition to various trial errors asserted, defendant alleges that plaintiff, under the evidence, was guilty of contributory negligence as a matter of law and that its motion for a directed verdict should have been sustained. The consideration of the latter question requires a review of the evidence pertaining to liability. Defendant offered no evidence in this case. Plaintiff's evidence with reference to how the

fall occurred consisted entirely of her own testimony and was as follows:

On the morning of December 16, 1961, plaintiff, enroute to her job at the Home for the Jewish Aged, was aboard defendant's bus as it approached the intersection of Troost and 78th Street in Kansas City. This was at approximately 7:00 a. m. It was daylight, the weather was quite cold (12–13°) and the ground was covered with three to five inches of snow. Plaintiff was riding in a seat about half way back on the left side of the bus, just opposite the rear exit door. As the bus approached the 78th Street intersection, plaintiff pulled the cord and stood up in the aisle opposite the rear exit door. Other passengers alighting at that point all went to the front door. The bus made a smooth, normal stop. Plaintiff was then facing the direction in which she would alight and she could see through the windows as the bus pulled up to stop. She observed that the sidewalk had been cleared off except for "a light skiff of snow in patches." The rear exit door came open when the bus had stopped. Plaintiff looked at the sidewalk and saw that it was clear. She then started to alight from the bus. She took her first step down from the aisle with her left foot. Then from the center step she descended with her right foot to the bottom step of the bus. Finally, from that point she stepped with her left foot on a mound of ice and snow in the street and fell, receiving injuries which included a fractured left lateral tibia.

Plaintiff testified that she did not realize that the rear of the bus was away from the curb and did not see the ice and snow on the street until after she was in the process of taking the last step from the bus to the ground. She attempted to retract this last step but she had started down and it was too late to do so.

Actually, the rear door of the bus where plaintiff alighted was three or four feet out from the curb, whereas the front door was flush with the curb. Plaintiff so observed after she had fallen. On cross-examination plaintiff testified that after the bus had stopped and the door opened, there was nothing to obstruct her view of the condition of the street and sidewalk. This was also true as she stood on the middle and on the lower steps before she descended from the last step to the street. She testified that she did not look at the ground until after she was in the process of stepping from the bottom step to the ground itself, at which time it was too late to stop. After being asked about whether she looked and whether her view was obstructed on the various steps as she descended, her testimony was summarized in final questions and answers thus:

"Q You didn't look when you were in the aisle, you didn't look when you were on the center step, you didn't look when you were on the bottom step, you didn't look until after you had started your step down and you couldn't stop yourself?

"A That is right, Sir.

"Q But there wasn't anything to obstruct your view of the street?

"A No."

Plaintiff also stated that she would have gotten off at the front door of the bus if she had looked and seen the condition existing at the rear door. She then was asked, "You just didn't look?" and she answered, "I just didn't look."

Apparently no one saw plaintiff fall. After she was on the ground she looked to where passengers were alighting from the front end of the bus and none were looking in her direction. The bus closed its doors and drove off. Plaintiff called out to the others but they did not hear. She crawled to the curb and called again and they then heard her and came to her assistance.

Plaintiff testified that she observed the area after she was standing on the sidewalk by the substation Post Office just opposite where she fell and "it was all rough

mounds and had car tracks and truck tracks through it, had tracks real cut up there, like a big mound of snow, the one that I fell on, and the cars in passing had made deep ruts there, and of course they made the one I stepped out on and went down." Another witness for plaintiff, Jesse Bellis, testified that after the incident he observed quite a bit of snow on the street in front of the Post Office where plaintiff's fall occurred and that it was rough and rutty. In his opening statement, counsel for plaintiff stated that "the street out from the curb at the place where the bus stopped was covered with ridges of ice and snow. There were tracks in it, wheel tracks in the snow there where it had melted and frozen. What had caused it to melt, the weather or something, salt or whatever it was they put on the street, I don't know and I don't think she knows, but as I said there were ridges of ice and snow out from the curb into the street. Apparently from what the evidence will be you will see that the ridges or ruts had been made at a time and for some reason or other had thawed and then refrozen."

Plaintiff's theory of recovery was that defendant was negligent in stopping its bus away from the sidewalk so that plaintiff was invited, directed and forced to alight from the bus onto the street where there was an uneven, raised, slick surface, and that defendant was negligent in failing to warn plaintiff of the unsafe and dangerous conditions where she was invited to alight. Defendant in its brief does not contend that plaintiff failed to make a submissible case on the question of defendant's negligence. We are not here concerned with that question. We can and do assume that plaintiff had ample evidence to submit defendant's alleged negligence to the jury. We are concerned presently only with the question of whether plaintiff was guilty of contributory negligence as a matter of law, which would bar her recovery and entitle defendant to have its motion for a directed verdict sustained.

■ Certain general rules must be considered. Even though a bus or streetcar company is guilty of negligence in stopping and inviting passengers to alight at a place not reasonably safe, the plaintiff is under a duty to exercise ordinary care for his own safety. This includes a duty to look and to see what is plainly visible,[1] and such plaintiff is charged with knowledge of what he should have seen if he had looked.[2] Each case must be considered on its own particular facts in order to determine whether, under those particular circumstances, the plaintiff was guilty of contributory negligence as a matter of law.[3] While a plaintiff is not under a duty to *look closely* for danger where there is no reason for him to anticipate danger,[4] the converse is true and if there is reason to anticipate danger, the defendant is under a duty to exercise ordinary care to look and ascertain if danger is present. In considering the question of whether plaintiff was guilty of contributory negligence as a matter of law, plaintiff is entitled to have his evidence taken as true and to have considered any evidence of defendant which supports plaintiff's case, and plaintiff is entitled to every reasonable inference

1. Ostresh v. Illinois Terminal Railroad Co., Mo., 313 S.W.2d 19; Curtis v. Capitol Stage Lines Co., Mo.App., 27 S.W.2d 747; Wilson v. Kansas City Public Service Co., Mo.App., 238 S.W.2d 73; Beahan v. St. Louis Public Service Co., Mo.App., 213 S.W.2d 253; Caley v. Kansas City, 226 Mo.App. 934, 48 S.W.2d 25.

2. Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621; Curtis v. Capitol Stage Lines Co., supra; Wilson v. Kansas City Public Service Co., supra.

3. Lewis v. Kansas City Public Service Co., Mo.App., 333 S.W.2d 526; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295.

4. Lewis v. Kansas City Public Service Co., supra; Williamson v. St. Louis Public Service Co., supra.

that may be drawn from the evidence.[5] This is true even in cases such as this one where the facts are undisputed.[6] Before a court is justified in finding a plaintiff guilty of contributory negligence as a matter of law, the facts must be such as to permit of no other reasonable conclusion.[7]

Applying these rules, what is the result? Plaintiff was the only witness who testified as to what happened. We take her testimony as true. Summarized briefly, it was this: Plaintiff knew that the ground generally was covered with three to five inches of snow. As the bus pulled up to her stop at 78th Street, plaintiff looked out the window to ascertain whether the sidewalk was snowy or clear and observed it was clear except for patches. The bus stopped and the rear exit door opened as plaintiff stood in the aisle facing it. The bus stopped at an angle from the curbing, with the front door flush and the rear door three to four feet from the curb. The street between the curb and the door was covered with snow and ice which was rough, rutty and slick. Plaintiff did not know that the bus door was away from the curb or that there was rough, rutty ice and snow on the street below until she was midway in the descent from the last bus step to the street. Plaintiff had looked at the sidewalk condition again when the door opened, *but she did not look to where she was alighting until after she was in the process of the last step from the bus to the ground.* There were no other passengers getting off at that door and there was nothing to obstruct the view of plaintiff of the street between the bus and curbing as well as of the sidewalk. This was true when plaintiff stood in the aisle of the bus and while she was on each of the two bus steps

before she started to take the final step to the ground. She specifically testified several times that she simply did not look. The street was covered between the bus and curb with rough, rutty ice and snow and plaintiff fell thereon. This rough ice and snow was visible. Plaintiff testified that as she stood on the sidewalk by the Post Office after her fall, she observed it. Plaintiff's witness Bellis (he came from the Home for the Jewish Aged to get her after learning of her fall) also so testified. Plaintiff actually saw it *when she looked* as she was taking the last step. Accepting plaintiff's evidence as true, it shows clearly that plaintiff did not look to see where she was stepping. She did not see that the rear exit door was out three or four feet from the curb and that she would step on rough, rutty ice and snow *because she did not look.* When she did look, it was too late to stop. There is no basis for any inference that plaintiff did look. She testified specifically to the contrary. There is no basis for any inference that she couldn't see the street or the distance of the bus from the curb. She testified that there was nothing to obstruct her view. There is no basis for any inference that the rough ice and snow was not visible. When she was standing by the Post Office after being assisted there, she observed the area where she had fallen and it was noticeably rough with deep ruts through it. Witness Bellis, when at the same place, said it looked like ruts of snow "and you couldn't keep from seeing it."

■ These facts and circumstances compel us to the conclusion that plaintiff was riding the bus when generally prevailing weather and ground conditions were such as to put her on notice as to the need to

**5.** Taylor v. Riddle, Mo., 384 S.W.2d 569; Carpentier v. Middlewest Freightways, Inc., Mo., 259 S.W.2d 816; Kirks v. Waller, Mo., 341 S.W.2d 860; Fyock v. Riales, Mo.App., 251 S.W.2d 102.

**6.** Fierce v. Shapleigh Hardware Co., Mo. App., 14 S.W.2d 511.

**7.** Swain v. Anders, 349 Mo. 963, 163 S.W. 2d 1045; Lewis v. Kansas City Public Service Co., supra; Fierce v. Shapleigh Hardware Co., supra.

look and exercise ordinary care for her safety. The plaintiff failed to look to determine the condition existing where she was to step as she alighted. The rough, rutty ice and snow should have been seen by plaintiff if she had looked before she committed herself to the last step. Plaintiff did not exercise ordinary care and was guilty of contributory negligence as a matter of law. We think the facts reasonably cannot admit of any other conclusion.

We have examined all of the cases cited on this question. Those relied on by plaintiff are distinguishable. In Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, a large crowd of children was crowded about the front bus door where plaintiff was to alight. These children were getting aboard at the time she was descending. She testified that she looked but could not see the pavement on account of the crowd. The court pointed out that the presence of the group of children at that very point was assurance to plaintiff that there was a street surface where she could step and that there was nothing in the facts of that case to cause her to anticipate danger. Under those circumstances, the question of contributory negligence was for the jury. In Wilson v. Kansas City Public Service Co., Mo. App., 238 S.W.2d 73, plaintiff testified that he did look before stepping down from the streetcar and it looked safe to him. He testified that he could not see the condition within 18 inches of the car because of the overhang and could not see the place where water had run over the track and frozen. Defendant sought to impeach plaintiff by a prior deposition in which plaintiff allegedly had testified otherwise. The court held that the deposition was not completely contradictory of his direct testimony and hence it was a matter for the jury to determine. In Lewis v. Kansas City Public Service Co., Mo. App., 333 S.W.2d 526, plaintiff was alighting from a streetcar at a loop turnaround platform provided by defendant company on its own right of way. It was an asphalt platform and plaintiff had alighted there many times, knew that the platform was immediately adjacent to the turnaround, and that it was a safe place to alight. The streetcar operator failed to pull the streetcar up far enough and there was no platform in front of the exit door when plaintiff alighted. Plaintiff was standing on the first step in the well and when the door opened started to step out and was unable to stop herself when she noticed that the asphalt platform was not there. The court points out that she had no reason to anticipate danger or that there would not be a safe place to alight on the defendant company's own platform in this turnaround loop. Under those particular circumstances, the court, giving plaintiff every favorable inference, held that she was not guilty of contributory negligence as a matter of law. Caley v. Kansas City Missouri & Kansas City Public Service Co., 226 Mo.App., 934, 48 S.W. 2d 25, involved a case where plaintiff stepped in a hole in an asphalt street when alighting from a streetcar. She testified that she looked before stepping to the ground and that she did not see any hole in the street. After she had fallen, she observed that there was a hole in the pavement in front of the car step. There was evidence that the hole was the same color as the asphalt street and it was somwhat difficult to see. The court stated that if plaintiff had looked *very closely*, it would have been possible to discover the defect, but that plaintiff was justified in relying on the implied assurance of the defendant company of a safe place to alight, and that while she would not be excused from not looking at all, she was not chargeable with the *very close* look necessary to see where, as there, she had no reason to anticipate danger. The court stated it was a close question but left the matter of contributory negligence to the jury. Other cases cited by plaintiff deal largely with principles applicable to such cases rather than being particularly close on the facts and do not require detailed analysis.

In view of our conclusion that plaintiff was guilty of contributory negligence as a matter of law, it is unnecessary to consider the trial errors asserted by defendant.

The judgment is reversed.

All of the Judges concur.