Lydia SWIASTYN, Respondent,

v.

**ST. JOSEPH LIGHT & POWER COM-PANY, Appellant.**

No. 25299.

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Sprague, Wilcox & Houts, St. Joseph, for appellant.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for respondent.

MAUGHMER, Commissioner.

The plaintiff, Lydia Swiastyn, received a verdict and judgment of $7,000.00 in damages for injuries received when she fell while alighting from defendant's bus. Plaintiff's petition charged that defendant allowed "ice and packed snow" to accumulate on the bus steps, and that in the exercise of the highest degree of care, it should have removed same or warned plaintiff of the "slippery and dangerous condition", but failed to do so and as a direct result plaintiff suffered severe injuries. Plaintiff did not submit on failure to warn, but solely on failure to remove. Defendant denied it was negligent and pleaded contributory negligence as an affirmative defense. Defendant appeals, claiming first, that its motion for directed verdict should have been sustained because the evidence does not show negligence on its part, and second, it does show that plaintiff was contributorily negligent as a matter of law. Defendant also asserts the court erred in giving Instruction No. 3 and by admitting incompetent evidence.

The accident occurred about 8:00 P.M. on December 30, 1967. At that time plaintiff was 42 years of age. She was a recent immigrant and was unable to express herself fluently in English. She had regular employment with the Whitaker Cable Company during the week and on weekends did housework for hire. She resided at 1517 Penn Street in the southern part of St. Joseph, Missouri. On the day of the accident—a Saturday—Mrs. Swiastyn had done housework for Mr. and Mrs. Louis Kranitz. About 6:00 P.M., Mr. and Mrs.

Kranitz took her in their automobile to the East Hills shopping center where she was "dropped off" at the Katz drug store. She there made three purchases but all three packages were placed in one sack. Shortly thereafter she boarded one of defendant's buses. At that time she described the weather as "bad and windy. Windy. Snowing." Referring to the steps on the bus at East Hills, she said: "It was slush and wet." She rode this bus downtown to 6th and Francis Streets where she got off and went into the nearby Katz store to wait for a Wyatt Park bus which would take her home. She stated that she had no difficulty in getting onto or off the bus during this first trip.

After a short wait, the Wyatt Park bus which was operated by one man, arrived and plaintiff got aboard. She was wearing rubber-soled overshoes. Again describing the weather and the condition of the bus, she said: "It was melting snow. Like I say, it is wet, but it is kind of mixed. Wet snow, like icy is how it was." "It was snowing all afternoon." She had no difficulty getting aboard. In due time the bus approached 15th and Penn Streets—her point of debarkation. She signalled for the bus to stop and it did so.

The bus was equipped with a heater in front but not in the stairway. There were overhead lights and a special light on the front steps. She said the stop was made about two feet out from the curb and opposite a street light. It was then nearing 8:00 P.M. Plaintiff said the bus stopped about two feet from the curb and the paving was not level but curved. This seems to be immaterial since she says she slipped on the bus step and not in the street. Mrs. Swiastyn said the bus came to a complete stop before she got up from her seat. She had her purse hanging over her left arm, the package (her purchases) was "nestled in my left arm" and she was holding a package of hair spray in her left hand. She stated that the platform was wet but had no snow or ice on it. When she reached the steps (two in number)

she looked down and could see both steps clearly. She held on to the "bar" handrail with her right hand. In describing her descent she said that she didn't slip on the first step but got there with both feet. She also went down onto the second step, first with her right foot and then with her left, with no difficulty. Then she "looked down again" and saw an accumulation of "maybe two inches" of snow outside. She described the occurrences thereafter this way: "I try to reach out with my left foot ground— However, before I did I slipped with my foot from the second step." She fell, breaking her left ankle.

No other witness testified for plaintiff as to liability. She called three other witnesses—namely Dr. Jacob Kulowski, orthopedic specialist, who was her attending physician, an office employee at Whitaker Cable where plaintiff worked, and her daughter who acted from time to time as an interpreter. Rick Crawford, 16 years old, and a passenger on the bus, was called as a witness by defendant. He did not see plaintiff fall but assisted her afterwards. He observed the steps and said they were wet but there was no snow or ice on the platform or steps. Mr. Robert Hall, bus driver, also stated that the steps were wet but there was no snow or ice on them. He said Mrs. Swiastyn fell after she was in the street. No testimony was produced by either side as to the temperature at any time during the day of the accident—whether it was below or above freezing—and how much. The plaintiff made no estimate as to the depth of the accumulation which she said was on the step, nor how long it had been there, unless we assume that the "melting snow" which she saw when she got aboard remained constant until her descent.

■ In determining if defendant's motion for directed verdict should have been sustained we, of course, accept plaintiff's evidence and all reasonable inferences therefrom to be true. Hurley v. Missouri Pacific Transp. Co., Mo.App., 56 S.W.2d 620. Just what are the facts as

testified to by plaintiff, who was her only witness as to liability? We believe that fairly considered it shows: Plaintiff, a paying passenger, in attempting to alight from defendant's bus, slipped on the bottom step, fell and was injured. The accident occurred about 8:00 P.M. It had been snowing all day, "wet snow, melting snow". The bus platform was wet but had no snow, slush or ice on it. The two bus steps were wet and plaintiff saw "melting snow" on them. There was about two inches of snow outside. Plaintiff who was carrying a package cradled in her left arm, held onto the handrail with her right hand. She reached the platform and the bottom step with both feet without accident. She was reaching with her left foot for the street, when her right foot slipped on the bottom step. We think plaintiff described a day when the temperature was above freezing. It had to be since she said there was "slush" and the snow was melting. Her description of the condition of the steps did not include any accumulation of ice on the steps—only snow and slush. It was snowing at the time and of course some snow would fall on the steps when the door was opened, while slush and snow would be "tracked in" by passengers getting on and off the bus. Plaintiff looked before attempting to descend and saw all of these existing conditions which she described. Neither plaintiff nor any witness for her said how much "slush" had accumulated on the steps or how long it had been there, except she saw some "melting snow" when she got aboard and some "melting snow when she alighted."

■ A carrier is required to exercise the highest degree of care in securing the safety of its passengers while alighting and in providing a reasonably safe place for them to disembark, but is not an insurer of the passengers' safety. 13 C.J.S. Carriers § 723, pages 1352–1353; Lacks v. Wells, et al., 329 Mo. 327, 44 S.W.2d 154, 157; Stofer v. Kansas City Public Service Co., 226 Mo.App. 376, 41 S.W.2d 614; Bond v. Kansas City Transit, Inc., Mo. 401 S.W.

2d 440. In Lacks v. Wells et al., supra, page 157 of 44 S.W.2d the court quoted with approval the following from Craig v. Wabash Railroad, 142 Mo.App. 314, 126 S.W. 771, 772:

" * * * 'the carrier is not the insurer of the safety of his passenger, who is held to exercise reasonable care for his own safety when in the act of alighting from the carrier's conveyance.' "

■ A carrier on a dry day, in the exercise of the highest degree of care to provide a reasonably safe place for passengers to alight, would be expected to have a dry platform and dry steps. But on a rainy day, in the exercise of due care, a carrier would not provide, and a passenger would not expect to find, dry steps. In other words, the weather affects the conditions provided and also what a passenger may expect to find. We find this reasoning enunciated by our Supreme Court in Bond v. Kansas City Transit, Inc., Mo., 401 S.W. 2d 440, 443, 444, 445. We quote:

" * * * While a plaintiff is not under a duty to *look closely* for danger where there is no reason for him to anticipate danger, the converse is true and if there is reason to anticipate danger, the defendant is under a duty to exercise ordinary care to look and ascertain if danger is present. * * * "

\* \* \* \* \* \*

"These facts and circumstances compel us to the conclusion that plaintiff was riding the bus when generally prevailing weather and ground conditions were such as to put her on notice as to the need to look and exercise ordinary care for her safety. * * * "

The Supreme Court of Rhode Island (Riley v. Rhode Island Co., 29 R.I. 143, 69 A. 338, 340), from which we will quote later, reached the same conclusion.

The defendant cites five cases in support of its contention that it was not negligent. One case simply rules that a carrier is not an insurer. Another concerns a business

invitee in a beauty shop where the degree of care is different. A third concerns failure to warn, which is not applicable to our case since plaintiff admits she saw the conditions. The other two are in point but from foreign jurisdictions. In one of these cases—Labrie v. Donham, 243 Mass. 584, 138 N.E. 3—there was a verdict and judgment for plaintiff which on appeal was reversed by the Supreme Judicial Court of Massachusetts. Plaintiff slipped and fell while alighting from defendant's street car. Her evidence was that the step was very slippery, it was "not icy but had a mushy or slimy smooth surface"; "that it had thawed most of the day"; that "it was slushy and it was the breaking up of a cold snap." The court said:

"Assuming that there was ice of the thickness of a piece of paper on the step of the car, there is nothing in the evidence to show how much of the step was covered by the ice, nor how long it had been there. * * *"

* * * * * *

"In the case at bar the mere fact that the step was wet and slippery when the plaintiff alighted, as testified to by some of the witnesses, without further evidence tending to show the extent and cause of this condition and the length of time it had existed, did not prove that the defendant was negligent or that the car was defecetive. * * *"

In Byrne v. Connecticut Co., 123 Conn. 304, 195 A. 184, there was a verdict for plaintiff, who allegedly slipped upon the step of defendant's bus and fell while alighting. The court reversed the judgment. Plaintiff said that as she was about to alight she saw ice on the step, took hold of a handle on the side of the door, but as she put one foot on the ground the other slipped on the ice, causing her to fall. There was evidence it had been raining, sleeting and freezing—crusty snow on the ground and icicles hanging from the trees and wires. There was no evidence as to how long the ice had been on the step or if the driver knew about it. The court said:

"* * * The only basis of negligence would be that the driver in the course of the operation of the bus should have taken the precuation to examine the step just before she alighted and to see if there was ice upon it. Translated into terms of duty, this would mean that the driver was under an obligation at every stop the bus made to examine the step. Under the existing conditions this was too high a measure of care to impose upon the defendant. * * *"

Plaintiff's brief mostly attempts to distinguish or point out the inapplicability of the cases cited by defendant on the question of defendant's negligence. She only cites one case affirmatively or as being in support of her charge that defendant was negligent. In this one case (Moses et al. v. Kansas City Public Service Co., et al., 239 Mo.App. 361, 188 S.W.2d 538), it was alleged that defendant stopped the bus away from its regular stopping place and near a hole in the pavement, into which plaintiff stepped as she was descending and was injured. We do not regard the case as quite in point on the negligence question.

We have read and considered numerous opinions from this and other jurisdictions where a passenger sought damages from a carrier, allegedly caused by slipping on slippery, slushy, snow-covered or ice-covered steps, while alighting. In an annotation on this question in 117 A.L.R. 522, the duties and liabilities of a carrier generally are stated this way:

"A rule generally recognized and adhered to is that it is the duty of a carrier to exercise such care and diligence in the removal of snow and ice from its platforms and steps as are consistent with the practicable operation of its business to transport. * * *"

In Bate v. Harvey et al., Mo.App., 195 S.W. 571, where the snow and slush on the step had frozen into ice one and one-half to two inches thick and was packed down hard, even though there was no direct evidence as to how long it had been there, the

court held the issue of negligence was for the jury. In Craig v. United Rys. Co. of St. Louis, 175 Mo.App. 616, 158 S.W. 390, freezing temperature had converted slush and snow into ice on the carrier's steps. It was held in view of the quick change into freezing weather which would and did change the slush into ice, that a jury question was presented.

The alighting passenger (Blankenship v. St. Louis Public Service Co., Mo., 71 S.W. 2d 723, 727) alleged the streetcar started with a jerk, which, coupled with a slippery platform or step, caused her to fall. The court said:

"* * * It is true no witness testified how long prior to plaintiff's fall the platform and step had been in the condition in which she said they then were. It was incumbent on her to produce evidence from which the jury could properly find that such condition was known to defendant or had existed long enough that by the exercise of due care it could have been discovered and remedied. * * *"

In Riley v. Rhode Island Co., 29 R.I. 143, 69 A. 338, 340, the plaintiff slipped on the step of defendant's street car while descending and was injured. The temperature was below freezing. A snowstorm began the day before and continued with intermissions of rain. Before starting the run the accumulation of snow and ice had been removed from the step, but it had a covering of snow and ice when plaintiff fell. The trial court directed a verdict for defendant. The Supreme Court affirmed and said:

"In the case at bar we think it would be unreasonable to hold that it was the duty of the defendant corporation to prevent the step from becoming slippery by the ingress of passengers during the passage of the car along its route. In a climate such as ours the effectual performance of such a duty would at times cause serious inconvenience to the traveling public, and during the contin-

uance of a storm would be impossible. The prevalence of stormy weather and a freezing temperature imposes upon a passenger an extra degree of care, which he cannot expect the carrier to save him from. He must bear his share of the burden of 'the inconstant year.' "

The court also incorporated in its opinion, and with approval, two quotations from other appellate courts, as follows:

(From Palmer v. Pennsylvania Co., 111 N.Y. 488, 18 N.E. 859, 861)

"* * * 'The immediate and continuous removal of all snow and ice from such trains, or the covering of them with sand or ashes in such manner that no slippery places shall be at any time exposed, would be quite impracticable and beyond the duty which a railroad owes to its passengers. The presence of snow or ice upon exposed places on moving cars is an accident of the hour, and no ordinary diligence could, during the prevalence of a storm, wholly remove its effects from the places exposed to its action, so as to prevent accidents to heedless and inattentive travelers. * * * It is safe to say that such corporations should not be held responsible for the dangers produced by the elements until they have assumed a dangerous form, and they have had a reasonable opportunity to remove their effects.' * * *"

(From Fearn v. West Jersey Ferry Co., 143 Pa. 122, 22 A. 708, 709):

"* * * 'It is well known that rain or snow, falling upon the sidewalks of a town or city, the steps and platform of railway cars, and the decks of ferryboats, will render them slippery, and consequently more difficult to walk upon. But it is not practicable to absolutely prevent this condition while the rain or snow is falling, and the mere existence of it during the storm which causes it raises no presumption of negligence on the part of the municipality, the railway, or ferry company.' * * *"

Seidenberg v. Eastern Massachusetts St. Ry. Co., 266 Mass. 540, 165 N.E. 658, is an opinion by the Supreme Judicial Court of Massachusetts. There the negligence alleged was a slippery floor coupled with a jerk in starting before the passenger was seated. A judgment for defendant was directed. We quote from the opinion:

"The wetness of the floor of the car as described constituted no evidence of negligence on the part of the servants of the defendant. That point is covered by numerous decisions." (Citing cases.)

In Griffin et al v. Hohorst, Inc. et al., 14 N.J.Misc. 421, 185 A. 535, 536, the plaintiff while alighting from defendant's bus, slipped on ice which allegedly had accumulated on the step. The plaintiff said she "saw a patch of ice and snow between three to four inches in diameter and a quarter of an inch thick". The Supreme Court of New Jersey reversed a judgment for plaintiff and stated that:

"* * * Presence of ice at the time of the accident is not, however, sufficient, under the circumstances of the case, to prove negligence. The doctrine of res ipsa loquitur does not apply.

"The right of action depends upon negligence by the defendants, and the burden of proving that negligence is upon the plaintiffs. A bus company, like any other transportation company, is bound to inspect its vehicles, but is not required to keep up a continuous inspection. Accumulations of snow and ice on car steps and platforms, which cannot be prevented in the prosecution of the carrier's business, will not be imputed to it as negligence. * * *"

The opinion quotes and approves the following from Hunter v. Public Service Railway Co., 105 N.J.L. 300, 304, 144 A. 305, 307:

"* * * 'As has been stated, continuous inspection is not required. It would be unreasonable to hold a carrier liable for any condition of unsafety which might arise. The carrier owes a duty to transport passengers. This duty could not be performed if it was required, in order to escape liability, to have the steps of its cars free at all times from accumulations of ice and snow. To hold a carrier liable, it must be shown that there has been a sufficient previous opportunity to remedy the danger. *The plaintiffs' proof was lacking, in that there is nothing in the evidence to show how long the ice was on the platform, if it was there, and that the defendant below had had a sufficient previous opportunity to remove it.'* * * *" (Italics ours.)

In the case of Ponton v. United Electric Rys. Co., 61 R.I. 203, 200 A. 425, 427, a directed verdict for the defendant was sustained where it appeared that during a rain which froze as it fell, plaintiff was injured as a result of slipping on ice which she claimed had formed on the heated vestibule of the defendant's street car, there being no direct evidence as to how long the ice had been there. The court said:

"To hold the defendant liable because of the presence of ice inside the vestibule of the car, assuming the evidence supports that claim, the plaintiff must show facts from which it could reasonably be inferred that such ice had been there for a sufficient time to give the defendant notice of its presence and an opportunity for its removal. In this connection the nature of the weather, the heat of the car and all other surounding facts and circumstances must be considered. We find no such reasonable inference possible from the evidence introduced in the present case."

 We find no case where recovery was even sought, based upon wetness alone. Recoveries, based upon "slickness" of the steps, are found only in those instances where wetness (snow and slush) is coupled with ice, and then only where plaintiff produces evidence as to the amount of ac-

cumulation, how long it had been there and poses a question if defendant had a reasonable time to remove the slippery condition or salt the ice. In other words, the burden is upon plaintiff to prove first, the condition of the step is dangerous for an alighting passenger who is in the exercise of ordinary care for his own safety. No case is found where snow, slush and ice were ruled to present the issue in the absence of a showing that there was a substantial accumulation and that it had been there long enough for defendant in the exercise of the highest degree of care to have removed same.

■ In our case plaintiff's evidence shows: 1. It was snowing. 2. The snow was melting, resulting in slush and wet snow. 3. There was no estimate as to the amount of the accumulation, no proof as to temperature, no evidence as to how long the accumulation had been there or what opportunity defendant had to remove same. A finding that the condition and accumulation described by plaintiff was of such an amount and of such slickness as to be dangerous and had been there long enough for defendant (considering the fact it was snowing and that passengers were boarding and descending) in the exercise of due care, to have removed same and kept the steps clean and clear, could only be arrived at by speculation, surmise and guesswork. The carrier is not an insurer. In our opinion plaintiff's evidence does not make a submissible case and the motion for directed verdict should have been sustained. The appellate courts of New York, Pennsylvania, New Jersey, Massachusetts, Connecticut and Rhode Island clearly would so hold. We believe their reasoning is sound and their requirements are reasonable. It is within the realm of possibility that upon a retrial plaintiff might with additional and more complete evidentiary coverage, present a submissible case. We do not wish to foreclose her in this respect. Hence, we shall remand the case so that she may have that opportunity.

■ Defendant says plaintiff was contributorily negligent as a matter of law and cites Bond v. Kansas City Transit, supra, in support. The contributory negligence in Bond was failure to look, which is out of our case since the plaintiff states that she did look and observed the conditions. Contributory negligence does not usually arise unless the defendant is primarily negligent, which in our view, has not been established.

■ Defendant complains as to Instruction No. 3, which we set out:

### "INSTRUCTION NO. 3

"Your verdict must be for the plaintiff if you believe:

First, there was an accumulation of ice and snow in the platform or steps of the motor bus of defendant, and as a result, the platform and steps were not reasonably safe for the use of passengers, and

Second, defendant knew, or by using the highest degree of care should have known, of the existence of this condition, and

Third, defendant failed to use the highest degree of care to remedy it, and

Fourth, as a direct result of such failure, plaintiff was injured,

unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5.

The term 'highest degree of care' as used in this instruction means that degree of care that a very careful and prudent person would use under the same or similar circumstances."

MAI contains no separate instruction for this type of case. Plaintiff in preparing Instruction No. 3, modified MAI 22.04, which is the verdict-directing instruction for use in a "sidewalk defect" case. Defendant says MAI 22.03 for an invitee is more suitable as a base from which to start. It is not the starting point but the finished

product which is vital. Defendant says first the instruction does not declare defendant's duty to be a duty to warn. The duty to warn is out of our case since plaintiff saw and knew of the conditions. This complaint is not valid.

▬ Defendant next complains that the instruction should have charged plaintiff with the burden of proving that the "defect" or dangerous condition was known to defendant or had existed long enough for defendant (in the exercise of due care) to have discovered and remedied or removed the accumulation. Such is the law. However, one of the aims of the new instructions is to get away from factual recitations and requirements of specific factual findings by the jury. Instruction No. 3, like MAI 22.04—requires a finding of the defect—accumulation of snow and ice—dangerous condition—defendant's actual or imputed knowledge and failure to use highest degree of care and remedy same. Of course, unless defendant had a reasonable time to remove after knowledge, even the highest degree of care would not impose the duty. We refuse this criticism. We do believe the instruction contains elements as to which there is no evidence—(1) No evidence of any accumulation on the *platform*. (2) No evidence that the *platform* was not safe. (3) No evidence of an accumulation of *ice* on either the platform or steps. It is fundamental that an instruction must be bottomed upon evidence. Before a factual finding may be submitted in an instruction there must be some evidence of that fact. Otherwise an issue not in the case is submitted and a verdict is authorized upon a finding which is unsupported by evidence. The St. Louis Court of Appeals—Pasternak v. Washak, 392 S.W.2d 631, 640, clearly declared this rule which is commonly understood. We quote:

"* * * The jury may well have been misled by the submission, for '* * * Submitting factual issues to a jury implies there is substantial evidence warranting the submitted finding, * * *'

Switzer v. Switzer, Mo., 373 S.W.2d 930, 940. Hence it is held that '* * * The giving of an instruction where there is no evidence upon which to base it constitutes reversible error. * * *' * * *." (Citing cases.)

We believe these defects in Instruction No. 3 are prejudicial and require a remand for such error.

▬ Defendant did not object to the testimony as to the slope of the street. Hence the point is not saved. The evidence as to plaintiff's past earnings at Whitaker Cable where she was regularly employed, was, we believe, properly received.

The judgment is reversed and cause remanded.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.